**3Z CORPORATION, Appellant,**

v.

**STEWART TITLE GUARANTY COMPANY, et al.,**
**Appellees.**

**No. 09–92–065 CV.**

Court of Appeals of Texas,
Beaumont.

April 1, 1993.

Rehearing Denied April 15, 1993.

Jerry L. Zunker, Austin, for appellant.

Mark E. Price, Anthony G. Brocato, Beaumont, Paul J. McConnell, III, De-Lange, Hudspeth & Pitman, Houston, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant, 3Z Corporation, hereinafter called "3Z", brought suit in the trial court below against Stewart Title Guaranty Company, hereinafter called "Stewart Guaranty", and Stewart Title of Montgomery County, Inc., hereinafter called "Stewart Title", under various theories including breach of the Texas Deceptive Trade Practices Act, the Texas Insurance Code, common law fraud, and negligent misrepresentation. Both defendants filed motions for summary judgment which motions were separately granted as to Stewart Guaranty on December 10, 1991, and Stewart Title on December 11, 1991. Appellant was ordered to take nothing and the court held that appellant's claims were groundless and brought in bad faith, or brought for the purpose of harassment and awarded $1,500 as reasonable attorney's fees to each appellee. Appellant's point of error before this Court is that the trial court erred in granting summary judgments. We affirm the judgment and award of attorney's fees as to Stewart Guaranty, sever the appeal affecting Stewart Title and reverse and remand for trial on the merits.

Factually, on August 17, 1984, Stewart Title issued a commitment for a policy of title insurance to appellant covering lots 1 and 35 in Walnut Grove Section One, a subdivision in Montgomery County, Texas. At that time title was vested in Anchor Financial Corporation and the commitment

actually covered other lots in the subdivision. Under schedule C of the policy certain exceptions were noted including a vendor's lien for over $500,000 in favor of Edna Lambright covering six lots in the subdivision including lots 1 and 35. Also noted was a deed of trust in favor of First City Bank—Inwood Forest N.A. which covered four lots but did not include lots 1 and 35. Several other liens were listed and the instructions from the title company were as to all the liens indicated "obtain and record partial release."

On September 28, 1984, 3Z received a deed of conveyance to lots 1 and 35 from Anchor Financial Corporation. The conveyance was expressly subject to a lien in favor of First City Bank—Inwood Forest, but in view of the policy of commitment reflecting that the subject property was not covered by said lien, appellant was not concerned. The grantor had always represented that the subject property was not affected by the Lambright vendor's lien.

Appellant again ordered a policy of title insurance for lots 1 and 35 only from Stewart Title of Montgomery County and a policy of commitment was issued January 20, 1986, in the name of the appellant. In the list of exceptions, the vendor's lien in favor of Edna Lambright and the deed of trust in favor of First City Bank—Inwood Forest were omitted as not affecting the subject land.

On August 29, 1986, another policy of commitment for lots 1 and 35 only was issued in favor of the appellant covering the subject land and again schedule C reads identical to the policy of commitment dated January 20, 1986.

At this time partial releases had been obtained on several of the liens and Jimmy W. Zunker, President of 3Z, testified that things were looking good and "we thought it was just a matter of time before we would be able to get our title policy." Mr. Zunker also testified by affidavit that it was important to get a title policy without any liens showing as exceptions in the policy so that the lots could be marketed easier. After receiving the January commitment, Jimmy Zunker called Stewart Title to

make sure that the Lambright vendor's lien and the First City Bank—Inwood Forest lien did not apply to the subject property. He spoke to Mrs. Wanda Keller, Assistant Vice President—Escrow Officer, who allegedly told him that "the policy of commitment was absolutely right, that there were only three liens against our lots [the subject property], that is the Walker—Kurth lien, the lien in favor of Caliber Construction, and the Buddy Adams lien."

In the later part of 1989 or early part of 1990, Mr. Zunker noticed that he had not received any tax statements on the subject property so he called the tax collector and was informed that the lots were no longer in the name of 3Z but rather in the name of a third party. He then called Stewart Title Company and was informed that First City Bank—Inwood Forest had foreclosed on their lien covering the subject property in November of 1987 and that the subject property had been sold at a trustees sale.

Appellant asserts no rights based upon a policy of title insurance. Appellant's action in the trial court is predicated upon the oral representation made by Wanda Keller. 3Z contends that it was attempting to satisfy various exceptions in the title commitment by obtaining releases of outstanding liens so that it could receive a title insurance policy free of existing liens. Appellant makes no contentions that it would not have purchased the title insurance policy if disclosure of the lien in question had been made by Stewart Title, instead the contention is that the appellant relied on the nondisclosure to its detriment. 3Z contends that the title commitment is only a point of reference and that its action is grounded on the verbal representations by the employee of Stewart Title that the commitment and its terms remained valid at the time of the conversation.

■ Appellant asserts an action against appellees under the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987 & Supp. 1993). Initially, 3Z must show itself to be a consumer which is defined as an "individual, partnership, corporation, this state, or a subdivision or agency of this state, who

seeks or acquires by purchase or lease any goods or services ..." TEX.BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). This is a question to be determined by the Court. *Johnson v. Walker,* 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, writ denied). The term "services" includes the purchase of insurance policies and even though the transaction is not consummated, the prospective purchasers are considered consumers. *McCrann v. Klaneckey,* 667 S.W.2d 924 (Tex.App.—Corpus Christi 1984, no writ). The consumer status is dependent on the relationship to the transaction and not the contractual relationship between the parties and there is no requirement that the offending party's deceptive or misleading conduct occur simultaneously with the sale of goods or services that forms the basis of the consumer's complaint. *Zimmerman v. First American Title Ins.,* 790 S.W.2d 690 (Tex.App.—Tyler 1990, writ denied). Appellees argue 3Z cannot be a consumer because 3Z failed to purchase the title policy within the life of the commitment. This places too restrictive an interpretation upon the definition of consumer. 3Z's status as a consumer depends upon whether it sought to purchase a title policy as alleged. Although standing as a consumer is a matter of law, the existence of the underlying facts which give rise to consumer standing may be factual issues for the jury. *See, Luker v. Arnold,* 843 S.W.2d 108 (Tex.App.—Fort Worth 1992, no writ); *Precision Sheet Metal Mfg. v. Yates,* 794 S.W.2d 545 (Tex.App.—Dallas 1990, writ denied). In this case, whether Stewart Title was acting gratuitously or thought it was selling a title policy, and whether 3Z intended to purchase a title policy or was merely obtaining what it thought was a free title examination until such time as the property was sold by 3Z, are disputed issues of material fact. In reviewing a summary judgment, we must take the nonmovant's statement as true; this is not the case in a trial on the merits. We hold that the movants failed to establish as a matter of law that 3Z was not a consumer.

The information in the title commitment is only relevant to whether the title company will bear the risk of defending the title; it has no relation to the transaction of purchasing the insurance. *See Martinka v. Commonwealth Land Title Ins.,* 836 S.W.2d 773, 778 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Nevertheless, we disagree that the title company has no duty to disclose the information to the consumer. *Robinson v. Preston Chrysler—Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982), distinguishes between an affirmative misrepresentation and a failure to disclose information under the DTPA. The law is settled that a title company does not owe a duty to the insured to discover and disclose a title defect. *Stewart Title Guar. Co. v. Cheatham,* 764 S.W.2d 315, 319 (Tex.App.—Texarkana 1988, writ denied)[1]. The title company has a duty to know if its representations are true and the title insurer can be liable under DTPA for affirmatively misrepresenting that a title defect does not exist even if it owes no duty to discover and disclose the defect. *Gibbs v. Main Bank of Houston,* 666 S.W.2d 554 (Tex.App.—Houston [1st Dist.] 1984, no writ). We therefore find that the alleged misrepresentation by Stewart Title of Montgomery County, Texas, was actionable under the DTPA regardless of whether it owed a duty to disclose the defect to 3Z. *First Title Co. of Waco v. Garrett,* 802 S.W.2d 254 (Tex.App.—Waco 1990, writ granted).

On the other hand, Stewart Guaranty cannot be liable for Keller's misrepresentation. Keller was the agent of Stewart Title, not Stewart Guaranty. The relationship between Stewart Guaranty and Stewart Title is established by law. TEX.INS. CODE ANN. art. 9.02(f) (Vernon 1981). Stewart Guaranty would have become an indemnitor under a title policy had such policy issued. A policy did not issue, thus, there was nothing to indemnify. Stewart Guaranty would not be liable under any of the

---

1. There is at least one exception provided by the State Board of Insurance in requiring a title insurer to list all restrictive covenants and where they are recorded or to affirmatively state that there are "none of record." 28 TEX.AD-MIN.CODE § 9 (West 1989) (title insurance). *See also W. Dorsaneo,* 11 TEXAS LITIGATION GUIDE § 256.04[3][a] (1992).

pleaded theories of liability under the set of facts before us. *Cheatham,* 764 S.W.2d at 315.

■ Appellant also brought an action against appellees under TEX.INS.CODE ANN. art. 21.21 § 16 (Vernon Supp.1993), which provides for a recovery of damages for any act defined by TEX.BUS. & COM.CODE § 17.46 to be an unlawful deceptive trade practice. *See Royal Globe Ins. Co. v. Bar Consultants,* 577 S.W.2d 688, 691 (Tex.1979). The alleged affirmative misrepresentation by Stewart Title of Montgomery County as to the status of 3Z's title to the subject land pleads a violation of the deceptive trade practices act which in turn is sufficient to trigger a violation of Article 21.21. *Stewart Title Guaranty Co. v. Sterling,* 772 S.W.2d 242 (Tex.App.—Houston [14th Dist.] 1989), *rev'd on other grounds,* 822 S.W.2d 1 (Tex.1991).

■ Regarding the statute of limitations question, there are certain dates which should be noted. 3Z received title to the subject property by deed dated September 28, 1984. The alleged misrepresentation by Stewart Title of Montgomery County occurred in the first trimester of 1986. Unknown to 3Z, on November 3, 1987, First City Bank—Inwood Forest foreclosed its lien on the subject property. In the last month of 1989 or the first month of 1990, 3Z discovered such foreclosure. On June 4, 1991, 3Z filed suit against the appellees. On summary judgment it is the movant who bears the burden of establishing as a matter of law that respondent either discovered or should have discovered acts giving rise to the cause of action under DTPA. *Burns v. Thomas,* 786 S.W.2d 266 (Tex.1990). The burden of proof is on the movant to negate the discovery rule by proving as a matter of law that no issue of material fact exists concerning when plaintiff discovered or should have discovered the misrepresentation. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109 (Tex.App.—Corpus Christi 1991, writ denied). Stewart Title claims 3Z should have known Keller's representation was false when it was made because the 1984 deed gave notice of the lien. The non-movant's affidavit states the oral representation caused them to believe the lien had been removed by some subse-

quent action. There is a fact issue whether 3Z knew or should have known the alleged representation was false at a time falling outside the applicable statutes of limitations. It was error for the trial court to grant summary judgment on the basis of the statute of limitation having run.

■ A summary judgment movant has the burden of showing there is no genuine issue of material fact as to all causes of action alleged by the non-movant. *See Clark v. First National Bank of Highlands,* 794 S.W.2d 953 (Tex.App.—Houston [1st Dist.] 1990, no writ). A summary judgment disposing of an entire case is proper only if, as a matter of law, the plaintiff could not succeed on any of the pleaded theories. *Delgado v. Burns,* 656 S.W.2d 428 (Tex.1983). As to Stewart Title of Montgomery County, there are fact issues to be resolved by the trier of fact, therefore, the granting of summary judgment in its favor was improper.

We affirm the trial court's granting of summary judgments as to Stewart Title Guaranty Company. Suit against Stewart Title Guaranty is severed from the remainder of the cause. We reverse and remand for trial as to Stewart Title of Montgomery County, Inc.

JUDGMENT AFFIRMED IN PART, REVERSED AND REMANDED IN PART.