L & H Packing v. Ward 










[WITHDRAWN]





IN THE
TENTH COURT OF APPEALS
 

No. 10-93-263-CV

     LEONARD & HARRAL PACKING COMPANY
     D/B/A L & H PACKING COMPANY,
                                                                                              Appellant
     v.

     IVAN WARD D/B/A WARD FEED YARD,
                                                                                              Appellee
 

From the 170th District Court
McLennan County, Texas
Trial Court # 91-1840-4
                                                                                                    

O P I N I O N
                                                                                                    

      Leonard & Harral Packing Company (L&H) appeals from a judgment awarding Ivan Ward
actual damages of $29,218.80, additional damages of $37,523.50, prejudgment and postjudgment
interest, and up to $14,100 in attorney's fees in a suit for damages to cattle owned by Ward while
L&H was transporting them to Louisiana. In twenty-three points of error, L&H attacks the
sufficiency of the evidence to support the judgment, complains that the court allowed Ward to
testify in a narrative form and that it was injured by Ward's impermissible jury argument, alleges
that the judgment is excessive, that the court awarded interest at an incorrect rate and on portions
of the judgment not subject to interest, and that the award of attorney's fees is not supported by
the record. We will affirm.
      In January 1991, L&H transported two shipments of 100 calves each from Ward's feedlot in
China Spring, Texas, to Crawford Meat Company in Franklinton, Louisiana. Crawford had
offered Ward $1.45 a pound for the cattle "on the rail," i.e., after butchering. The first shipment
contained two dead calves and the second shipment contained three dead calves upon arrival at
Crawford's plant. According to Ward, the remainder of the calves were so severely bruised that
Crawford was unable to use the meat in the intended manner. Because of the damaged condition
of the meat, Crawford lowered the price to $1.00 a pound, and Ward accepted the reduced
amount.
      Ward notified L&H that he held it responsible for the damages to the cattle and demanded
compensation. After L&H rejected his demands, Ward filed suit alleging breach of contract,
negligence, and knowing violations of the Deceptive Trade Practices Act (DTPA). See Tex. Bus.
& Com. Code Ann. § 17.50(a) (Vernon 1987). The jury found that L&H knowingly breached
a warranty of good and workmanlike performance, that the breach was a producing cause of
Ward's damages, that L&H was negligent, and that L&H breached an agreement to ship the calves
in "good condition." Ward moved for a judgment on the verdict, and L&H moved for a judgment
notwithstanding the verdict. The court denied L&H's motion and rendered a judgment in
accordance with the jury's verdict.
SUFFICIENCY OF THE EVIDENCE
      In multiple points of error, L&H attacks the sufficiency of the evidence to support the
judgment. When both "legally insufficient evidence" and "factually insufficient evidence"
complaints are raised, the appellate court addresses the "legally insufficient evidence" argument
first. See Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). To determine
a legally-insufficient-evidence challenge, we view the evidence in the light which tends to support
the jury's findings and disregard all evidence and inferences to the contrary. See Weirich v.
Weirich, 833 S.W.2d 942, 945 (Tex. 1992). If there is no evidence or merely a scintilla of
evidence to support the jury's findings, we will sustain the challenge. See Juliette Fowler Homes
v. Welch Associates, 793 S.W.2d 660, 666 n.9 (Tex. 1990); Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). In reviewing L&H's factual-insufficiency claims, we consider all of
the evidence and determine if the challenged finding is so against the great weight and
preponderance of the evidence as to be manifestly unjust. See Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986).
DTPA Theory
      We will consider L&H's attack on Ward's DTPA theory first. Ward pled that L&H breached
an implied warranty of good and workmanlike performance of a service contract. See Tex. Bus.
& Com. Code Ann. § 17.50(a)(2); Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349 (Tex.
1987). The jury found that:
1.L&H failed to perform the services in a good and workmanlike manner;
2.The failure was a producing cause of Ward's damages;
3.The amount of Ward's damages was $29,218.80;
4.L&H knowingly engaged in the wrongful conduct;
5.Ward was entitled to additional damages of $36,523.50.
      Generally, to recover under the DTPA on breach of a warranty, the plaintiff must show (1)
he is a consumer, (2) existence of the warranty, (3) breach of the warranty, and (4) the breach was
a producing cause of damages. See McDade v. Texas Commerce Bank, Nat. Ass'n, 822 S.W.2d
713, 718 (Tex. App.—Houston [1st Dist.] 1991, writ denied). However, a warranty of good and
workmanlike performance of a service contract can arise as a matter of law; thus, the existence
of an implied warranty in a particular transaction may be a question of law for the court to
determine. See Melody Home, 741 S.W.2d at 352-55; First American Title Ins. Co. v. Adams,
829 S.W.2d 356, 364 (Tex. App.—Corpus Christi 1992, writ denied).
      Point eight attacks the jury's finding that L&H failed to perform the services in a good and
workmanlike manner. In the argument under point eight, L&H presents three separate
contentions. L&H first alleges that there is no evidence of an express warranty of good and
workmanlike performance. L&H then argues that an implied warranty of good and workmanlike
performance could not arise because L&H was not modifying or repairing existing tangible goods. 
See Melody Home, 741 S.W.2d at 354. Finally, L&H complains that the jury was not required
to determine if Ward was a consumer for DTPA purposes.
      Disposing of the last argument first, L&H stipulated during the charge conference that Ward
was a consumer and agreed that the issue need not be submitted to the jury. Additionally, the
question of consumer status is a question of law for the court to decide, unless there is a dispute
concerning the factual issues that create a consumer status. See 3Z Corp. v. Stewart Title Guar.
Co., 851 S.W.2d 933, 937 (Tex. App.—Beaumont 1993, writ denied). If the facts are disputed,
the jury is called upon to resolve the factual issues, but the court still must decide the legal effect
of the resolved issues. See id. Thus, the argument concerning the lack of a jury finding on
consumer status is erroneous. 
      Ordinarily, the question of the existence of an express warranty is an issue of fact to be
determined by the jury. See McDade, 822 S.W.2d at 718. L&H did not object to the absence of
an issue on the existence of an express warranty. Thus, we can deem such a finding in support
of the judgment if there is legally and factually sufficient evidence to support a finding of an
express warranty of good and workmanlike performance. See Tex. R. Civ. P. 279; Ramos v.
Frito-Lay, Inc., 784 S.W.2d 667, 668 (Tex. 1990). 
      Ward testified that L&H is known to be a common carrier of cattle. According to Ward,
L&H represented that "they could handle the cattle and take care of them and all that sort of
thing." Additionally, Ward claimed that L&H "[s]aid they knew what they were doing." On
cross-examination, Ward stated that he believed that L&H warranted "[t]hat they were capable of
hauling calves in a workmanlike manner and knew what they were doing and would take care of
them and not damage them."
      "We define good and workmanlike as that quality of work performed by one who has the
knowledge, training, or experience necessary for the successful practice of a trade or occupation
and performed in a manner generally considered proficient by those capable of judging such
work." Melody Home, 741 S.W.2d at 354. Ward's testimony that L&H said it could handle the
cattle and take care of them and knew what it was doing in transporting the calves is legally
sufficient evidence to support a deemed finding of an express warranty to preform the
transportation service in a good and workmanlike manner. See S.I. Property Owners' Ass'n v.
Pabst Corp., 714 S.W.2d 358, 361 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). There
is no evidence to contradict Ward's testimony concerning L&H's representations as to its ability
to safely transport the calves to Louisiana; thus, the finding of the warranty is not so against the
great weight of the evidence as to be manifestly unjust. Because the evidence is legally and
factually sufficient to support the existence of an express warranty, we deem such a finding in
support of the judgment. See Tex. R. Civ. P. 279. Thus, we need not consider whether an
implied warranty arises in this type of transaction as a matter of law. Point eight is overruled.
      In point eleven, L&H challenges the jury's finding that its conduct was a producing cause of
damages to Ward. Again, L&H places a variety of arguments under the insufficient-evidence
heading of the point. We focus, however, on the point of error and will examine the evidence to
determine if it supports the finding that L&H's conduct was a producing cause of Ward's damages. 
      Ward testified that the 200 calves shipped by L&H had been fed in his feedlot for
approximately 120 days prior to shipping. He claimed that he "eyeballed every one" of the calves
that were shipped when he was sorting and loading them onto the L&H trucks. Ward testified that
none of the calves were "founders," "junkers," "outcasts," or "bloated." According to Ward,
when the calves left his feedlot, they were all "fat, finished calves." He asserted that the calves
"had done nothing to get bruised" prior to leaving his feedlot.
      Ward testified that he had shipped calves by twenty or twenty-five different trucking
companies. He stated that he "never" before had problems such as he had with these two
shipments. 
      Timmy Crawford, the owner of Crawford Meat Packing Company, testified on Ward's behalf. 
Crawford testified that he was at the plant when the first load of calves arrived on January 3
around 6:30 a.m. Although he did not meet the truck when it first arrived, he was called over to
it by one of his employees when the dead calves were discovered. He testified that there were two
dead calves and that one was condemned by a federal meat inspector, although Crawford could
not recall why. Other calves on the truck were "down," which Crawford defined to mean that
"[t]hey were just kind of beat up, run over, where they got down on the truck and the other ones
had just fell down on top of them, and they were just -- basically got beat up." He indicated that
all of the calves were "stressed out," that is, "these cattle came off [of the truck] and got to the
bottom of the loading deck, and they'd lay down. We'd have to go poke them to get them up and
move them. We'd get them in the back pen, and we'd look in the pen and you wouldn't see
anything standing. They'd all be laying down. . . . [T]hese cattle, we put them in the back and
poof, they just fall down just from being nervous, in that strain the whole time." Crawford
testified that he had "never" had a load of cattle that acted the way these did and that their behavior
was an indication of a "rough ride." 
      Crawford began to slaughter the calves that morning. When the hides were removed,
problems with the remaining calves were discovered. Crawford testified that "instead of the fat
being white, it was bloodshot like," "off-color," and "wasn't normal." 
      Crawford stated that he met the second shipment of calves when it arrived mid-morning on
January 7. Again, he saw several dead calves in the truck as he was guiding it into the plant. 
Crawford also testified that the calves were "fat," "well-rounded, finished" calves. He stated that
they did not appear to have been malnourished or mistreated while being fed. According to
Crawford, however, the calves in both shipments were severely bruised. He attempted to salvage
all the meat that he could: "Like some of them we could salvage a half a carcass. Some of them
we could salvage hinds and fronts . . . ." Ultimately, Crawford was only able to use many of the
calves as "boneless beef." He stated that there is no separate market for "boneless calf," but that
the meat was valued at "cow price." Finally, Crawford testified that he knew from his experience
that the bruises were fresh bruises.
      L&H called as a witness Mark Phillips, the senior driver for the first shipment. He testified
that it was neither too cold nor were the weather conditions too bad to haul the calves. He also
stated that he "wouldn't think" that any of the calves were in too bad of condition to be hauled. 
Phillips testified that he had problems keeping the calves on their feet from the very beginning of
the trip and that the problems continued throughout the journey to Louisiana. 
      L&H attempted to demonstrate that other factors played a role in producing the damages to
the cattle. There was testimony that the weather was bad; however, Ward also stated that he had
personally hauled cattle in worse weather without problems, and Phillips testified that the weather
was not bad enough to prevent hauling the calves. Crawford testified that there was mud on the
calves from Ward's feedlot, and that the calves were "cakey" from the mud; however, he also
stated that the mud did not affect his ability to use the meat as intended. Finally, Phillips testified
that he had not operated the vehicle in any way which would cause the animals to fall down, i.e.,
no quick stops or sharp turns. 
      "Producing cause" is an "efficient, exciting or contributing cause, that in a natural sequence,
produced the occurrence or injury." 3 State Bar of Texas, Texas Pattern Jury Charges
PJC 70.01 (2nd ed. 1990); see also Rourke v. Garza, 530 S.W.2d 794, 801 (Tex. 1975). The
evidence set out above is legally and factually sufficient to support the finding that L&H's breach
of the warranty of good and workmanlike performance was a producing cause of damages to
Ward. Point eleven is overruled.
      In point twelve, L&H claims that there is insufficient evidence to support the finding that
Ward suffered $29,218.80 in actual damages from L&H's breach of the warranty. Again, L&H's
arguments do not support the theory alleged in the point of error. L&H argues that intervening
causes were responsible for the damages and that Ward was actually enriched because he refused
to pay for the shipping. The intervening-cause argument relates to the finding of producing cause,
not to the amount of damages actually sustained. Any amount owed by Ward to L&H for shipping
goes to a claim by L&H for an offset, not to the amount of actual damages suffered by Ward. 
Thus, we will again focus on the theory alleged in the point of error and disregard the arguments
L&H puts forth in support of the point.
      The point states that the answer to the damage question is not supported by legally or factually
sufficient evidence. During his testimony Ward calculated the alleged loss on a chalkboard before
the jury. He calculated the amount of useable meat he would have expected to obtain from the
calves that died, added this weight to the amount of meat actually recovered from the animals, and
figured the total expected payment based on the agreed price of $1.45 a pound. He then subtracted
the amount that Crawford actually paid him and determined that the difference between the
expected and actual payment totaled $29,217.35. Ward's testimony is legally sufficient to support
an award of a like amount. We conclude that the difference between Ward's claim and the jury's
award, $1.45, is de minimis and does not require that the judgment be disturbed. See HSAM Inc.
v. Gatter, 814 S.W.2d 887, 890-92 (Tex. App.—San Antonio 1991, writ dism'd by agr.). 
      There is no evidence in the record to contradict Ward's testimony on damages. Other
evidence, such as L&H's transport slips, Crawford's "kill sheets"—the documents prepared by
Crawford at the time of the slaughter which record the dressed weight of the calves—and
Crawford's testimony that he reduced the amount he was willing to pay, also support Ward's and
the jury's calculation of damages. Thus, the jury's finding is not against the great weight and
preponderance of the evidence. Point twelve is overruled.
      The jury found that L&H knowingly engaged in the conduct that was a producing cause of
Ward's damages. In point thirteen, L&H claims that this finding is not supported by legally or
factually sufficient evidence. L&H argues that the evidence establishes that its conduct "was better
than the norm" and that Ward failed to prove "knowledge" as defined by the DTPA. See Tex.
Bus. & Com. Code Ann. § 17.45(9). "‛Knowingly’ means . . . actual awareness of the act or
practice constituting the breach of warranty, but actual awareness may be inferred where objective
manifestations indicate that a person acted with actual awareness." Id. 
      Crawford testified that he spoke with the drivers of the first shipment after discovering the
dead calves in the truck. He stated that "[t]he drivers said they had problems with them." 
Crawford also said that the drivers of the second load related that they too had problems keeping
the calves on their feet during the trip. 
      Phillips, the senior driver of the first shipment, testified that he had problems with the load
almost immediately after he left Ward's feedlot. He told the L&H dispatcher that the calves were
lying down in the truck before he left Waco. Phillips said that he stopped six times during the trip
and every time there were calves down. He admitted calling the L&H dispatcher five times and
each time the dispatcher told him to continue the journey. During cross-examination, he admitted
stating in a deposition that the instructions from the L&H dispatcher were to "[j]ust try not to stop
as much as you can and to hurry up with them." Phillips indicated that he wanted to leave some
of the calves at a barn along the way, but that he did not tell that to the L&H dispatcher. Instead
Phillips "asked [the dispatcher] what I should do. And he said keep going." In Phillips view, "If
[L&H] would have wanted [him] to unload them, [they] would have told [him] to unload them."
      Phillips' testimony is some evidence that L&H was actually aware of the problems its driver
was encountering with the calves. There is nothing in the record to contradict Phillips' testimony
concerning his report to L&H. Thus, the evidence is legally and factually sufficient to support
the finding that L&H knowingly breached the warranty of good and workmanlike performance. 
Point thirteen is overruled.
      Finally, L&H challenges in point fourteen the sufficiency of the evidence supporting the
amount of additional damages found by the jury. L&H argues that Ward failed to prove any
particular wrongful conduct. The DTPA provides: "If the trier of fact finds that the conduct of
the defendant was committed knowingly, the trier of fact may award not more than three times the
amount of actual damages in excess of $1,000. . . ." Tex. Bus. & Com. Code Ann. §
17.50(b)(1) (Vernon Supp. 1994). The only requirement imposed by the statute is a finding of a
"knowing" violation of the DTPA. We have upheld the finding that L&H knowingly breached
an express warranty of good and workmanlike performance. The additional damages awarded is
less than double the actual damages. Thus, the amount of additional damages is well within the
range available to the jury. See Haynes & Boone v. Bowser Bouldin, Ltd., 864 S.W.2d 662, 674-75 (Tex. App.—San Antonio 1993, no writ). Point fourteen is overruled.
Contract and Negligence Theories
      In points nine, ten, sixteen, seventeen, eighteen and nineteen, L&H attacks the sufficiency of
the evidence to support the jury's findings on Ward's breach of contract and negligence theories. 
However, we have upheld the judgment based on Ward's DTPA cause of action. Sustaining any
of these other points would not have an effect on Ward's right of recovery. Thus, we find it
unnecessary to address the arguments made by L&H in these points. See Cronin v. Bacon, 837
S.W.2d 265, 268 (Tex. App.—Fort Worth 1992, writ denied). Points nine, ten, sixteen,
seventeen, eighteen and nineteen are overruled.
Motions Based on Insufficient Evidence
      In point one, L&H complains that the court failed to instruct a verdict in its favor. However,
L&H never moved for a directed verdict. Thus, the complaint in this point is not preserved for
our review and is overruled. See Tex. R. App. P. 52(a). 
      In point two, L&H complains about the court denying its motion for judgment notwithstanding
the verdict and its motion for new trial. First, this point is multifarious because it complains about
the court's rulings on two separate motions presented at two distinct and separate times. See
Cleaver v. Dresser Industries, 570 S.W.2d 479, 483 (Tex. Civ. App.—Tyler 1978, writ ref'd
n.r.e.). These are not the type of complaints that the rules contemplate combining into a single
point of error. See Tex. R. App. P. 74(d). However, because we are to construe the briefs
liberally, we will consider the merits of the point. See id. 74(p).
      A judgment notwithstanding the verdict may be granted only when there is no evidence upon
which the jury could have made its findings. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227-28 (Tex. 1990). We have found the evidence factually sufficient to support the jury's verdict. 
Thus, the court did not err in denying L&H's motion. L&H's twenty-eight page motion for new
trial presented at least a dozen theories for a new trial, plus insufficiency of the evidence. In its
appellate brief, however, L&H focuses on the insufficiency theory. Again, because we have found
the evidence factually sufficient, we conclude that the court did not err in denying the motion for
a new trial. Point two is overruled. 
JURY CHARGE COMPLAINTS
      In point three, L&H argues that the court failed to apply the correct burdens to the parties in
the trial. First, L&H fails to point out how the court "allowed" the trial to proceed on an incorrect
theory. L&H did not request a charge on the burden of proof in a common-carrier lawsuit. 
Finally, we have sustained the judgment based on the breach of an express warranty, not on a
common-carrier theory. For all these reasons, point three is overruled. 
      In point six, L&H alleges that the court erred by refusing its requested instructions on act of
God, accident, waiver, and estoppel. Although L&H claims that it requested an instruction on
estoppel, the record does not reflect such a request. Thus, L&H cannot complain about the lack
of an instruction on estoppel. See Tex. R. Civ. P. 278. Moreover, because the court submitted
L&H's requested instruction on accident, L&H cannot complain about this instruction. 
      The court should submit instructions that are supported by the pleadings and some evidence. 
See id.; Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). L&H was required to plead the
affirmative defense of waiver if it intended to rely on the defense at trial. See Tex. R. Civ. P. 94. 
L&H's pleadings assert estoppel; they do not raise waiver. Thus, the court did not err in refusing
to submit L&H's waiver instruction. See Elbaor, 845 S.W.2d at 243. 
      Finally, there is no evidence to support an instruction on act of God. To qualify as an act of
God, the incident must have been due directly and exclusively to non-human forces without human
intervention or cause. See Scott v. Atchison, T. & S. F. R. Co., 572 S.W.2d 273, 279-80 & n.9-10 (Tex. 1978). There is no evidence in the record suggesting that the damage to the calves
occurred without some form of human intervention. Thus, the court did not err in refusing the
requested instruction. See Elbaor, 845 S.W.2d at 243. Point six is overruled.
      In point seven, L&H complains about the court overruling its no-evidence objections to the
submission of questions 1, 2, 4, 6, 9, and 10. Again, the standard of review of the court's ruling
on these objections requires us to determine if any evidence supported their submission. See id. 
We have found the evidence factually sufficient to support affirmative answers on Ward's DTPA
claim, questions 1, 2, and 4. Question 6 relates to Ward's negligence theory, and questions 9 and
10 relate to Ward's contract theory. Because we have upheld the judgment on DTPA grounds,
questions 6, 9, and 10 are irrelevant to Ward's right of recovery. Thus, point seven is overruled.
      In point fifteen, L&H complains that the court failed to give "adequate guidance" in the
charge to regulate the jury's discretion in considering the award of additional damages, as outlined
in Alamo Nat. Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). However, L&H did not request
such an instruction in substantially correct wording. See Tex. R. Civ. P. 278. Thus, this
complaint is not preserved for our review. Point fifteen is overruled.
COMPLAINTS REGARDING CONDUCT OF THE TRIAL
      Turning now to L&H's complaints concerning the conduct of the trial, point four asserts that
the court erred by allowing Ward to testify in a narrative form and from a document not produced
in response to a discovery request. Again, this is a multifarious point. However, we will address
each component of the complaint.
      Regarding Ward's narrative testimony, we are unable to find in the record where L&H
obtained an adverse ruling by the court on an objection to the narrative. See Tex. R. App. P.
52(a). The court initially cautioned Ward to avoid narrative testimony. On Ward's attorney's next
question, L&H objected to Ward's testimony as narrative. The court sustained the objection and
Ward testified in a strict question-answer format for an extended period thereafter. Twenty-four
pages later in the record, Ward answered one non-damage question with three pages of testimony. 
L&H did not object to his narrative answer at that time. Thus, L&H has not preserved this
complaint. See id. 
      When testifying concerning damages, Ward referred to a document that supposedly contained
calculations of the value of the calves and his alleged losses. L&H objected that the document had
not been produced when requested. The court overruled this objection and allowed Ward to
consult the document to refresh his memory during his testimony. Because L&H has not included
the document as part of the record, we do not know what the document contains. L&H has
alleged that it requested the document as part of its pretrial discovery, but this allegation is not
supported by any evidence in the record. As appellant, L&H has the burden of presenting a
record sufficient to show reversible error. See Tex. R. App. P. 50(d). At a minimum, L&H would
have to show the contents of the document and that it was actually requested. L&H has failed to
present any evidence regarding this document in the record, relying on statements of the attorneys
at trial. Thus, no error can be shown on this record. See id. Point four is overruled.
      In point five, L&H complains that portions of Ward's closing argument were improper. 
However, no objection was raised to the statements. Thus, error cannot be shown unless the
argument was incurably prejudicial. See Goswami v. Thetford, 829 S.W.2d 317, 320-21 (Tex.
App.—El Paso 1992, writ denied). L&H was required to raise this point in a motion for new trial
to preserve an incurable jury argument complaint for our review. See Tex. R. Civ. P. 324(b)(5). 
L&H has not pointed out, and we cannot find, where this issue was raised in its twenty-eight-page
motion for a new trial. Thus, this complaint is not preserved for our review. See id. Point five
is overruled. 
ATTACKS ON THE JUDGMENT'S SUBSTANCE AND FORM
      L&H attacks the amount of the judgment in point twenty, claiming that the damage award is
manifestly unjust and subject to remittitur. L&H raised this issue in its motion for a new trial. 
"Factual sufficiency is the sole remittitur standard for actual damages." Pope v. Moore, 711
S.W.2d 622, 624 (Tex. 1986). Thus, we examine all of the evidence to determine if sufficient
evidence supports the damage award, ordering remittitur only if the award is so against the great
weight and preponderance of the evidence as to be manifestly unjust. See Transportation Ins. Co.
v. Moriel, 37 Tex. Sup. Ct. J. 450, 466 (Feb. 2, 1994). This is the exact standard applied to
L&H's sufficiency-of-the-evidence challenge to the actual damage award in point twelve above. 
For the reasons stated in our discussion of that point, we conclude that the actual damage award
is not subject to remittitur.
      Additional damages are in the nature of punitive damages because they punish the wrongdoer
and provide an example to others. Haynes & Boone, 864 S.W.2d 674. The Texas Supreme Court
"recently imposed new procedural standards for punitive damage awards to help ‛ensure that such
awards are not grossly out of proportion to the severity of the offense and have some
understandable relationship to compensatory damages.'" Ellis County State Bank v. Keever, 37
Tex. Sup. Ct. J. 783, 789 (May 11, 1994) (Gonzalez, J., concurring) (quoting Moriel, 37 Tex.
Sup. Ct. J. at 465) (additional internal quotations omitted). Justice Gonzalez's concurrence
controlled the disposition of the petitioner's challenge to the sufficiency of the appellate analysis
of the evidence supporting the award of punitive damages in that case, requiring that the cause be
remanded to the court of appeals "with instructions to reconsider the punitive damages in
accordance with the standards articulated in Moriel." Id. at 789-90; see also id. at 790 (Hecht,
J., concurring and dissenting). Were we dealing with common-law punitive damages, we would
be compelled by Keever and Moriel to detail the evidence that supports the punitive damages in
light of the factors set out in Kraus. Id. at 789-90; Moriel, 37 Tex. Sup. Ct. J. at 466; Kraus, 616
S.W.2d at 910. 
      However, we are not dealing with common-law damages, but with statutory, legislatively
created "additional damages." See Tex. Bus. & Com. Code Ann. § 17.50(b)(1). We believe the
legislature has mandated that a three-to-one proportion of actual to additional damages in a DTPA
lawsuit is "not grossly out of proportion to the severity of the offense and [has] some
understandable relationship to compensatory damages." Thus, when, as in this case, DTPA
additional damages are less than three times the actual damages, the additional damages are not
excessive as a matter of law and, so, are not subject to remittitur. Additionally, we believe that
statutory DTPA additional damages are not subject to the review requirements of Moriel-Keever,
and so decline to detail the supporting evidence other than that evidence discussed in point thirteen
and fourteen above. Point twenty is overruled.
      In point twenty-one, L&H complains that the court ordered prejudgment and postjudgment
interest to accrue at the rate of 10% per annum rather than 6%. See Tex. Rev. Civ. Stat. Ann.
art. 5069-1.03 (Vernon 1987). L&H argues that, because the agreement to haul cattle was priced
in dollars and cents per pound, the contract is an account "ascertaining the sum payable." See id. 
However, courts have required that "the contract provide the conditions upon which liability
depends and that it fix ‛a measure by which the sum payable can be ascertained with reasonable
certainty’" before the 6% rate in section 1.03 is applicable. See Perry Roofing Co. v. Olcott, 744
S.W.2d 929, 930 (Tex. 1988). The contract between L&H and Ward did not address potential
damages to the calves. There is no evidence that the agreement contained a measure of damages
in the event of problems. Thus, the interest awarded is grounded in equity and was properly
calculated according to section 1.05 of article 5069. See Tex. Rev. Civ. Stat. Ann. art. 5069-1.05 (Vernon Supp. 1994); Rio Grande Land & Cattle Co. v. Light, 758 S.W.2d 747, 748 (Tex.
1988). Point twenty-one is overruled.
      Point twenty-two contains L&H's complaint concerning which portions of the judgment were
subject to interest. L&H contends the court improperly ordered that prejudgment interest would
accrue on the additional damages awarded by the jury under the DTPA and that postjudgment
interest would accrue on prejudgment interest. If the judgment is subject to differing
constructions, we will adopt the interpretation which renders it valid and legal. See Barnard v.
Barnard, 863 S.W.2d 770, 774 (Tex. App.—Fort Worth 1993, no writ). 
      L&H correctly asserts that prejudgment interest is not to accrue on DTPA additional damages. 
See Vail v. Texas Farm Bureau Mut. Ins. Co., 754 S.W.2d 129, 137 (Tex. 1988); but see Keever,
37 Tex. Sup. Ct. J. at 37.


 However, postjudgment interest may accrue on prejudgment interest
because prejudgment interest is considered part of the compensation to the plaintiff for the
defendant's wrong. See Matthews v. DeSoto, 721 S.W.2d 286, 287 (Tex. 1986). The amount of
prejudgment interest that accumulates prior to judgment is computed as simple interest in a
property damage case. See Tex. Rev. Civ. Stat. Ann. art. 5609-1.05, § (6)(a), (g). However,
after the judgment is rendered, the prejudgment interest becomes subject to the postjudgment
interest rate. 
      The court carefully segregated out each element of the award to Ward, avoiding the problem
of a lump-sum judgment. See Benavidez v. Isles Const. Co., 726 S.W.2d 23, 25 (Tex. 1987). 
Because the judgment specifies what amount is actual damages and what amount is additional
damages, we conclude that the interest award does not have the effect of allowing interest to
accumulate on additional damages. See Barnard, 863 S.W.2d at 774. 
      The court ordered the payment of interest by the following language: 
It is further ORDERED that the Judgment hereby rendered shall bear interest at the
legal rate for pre-judgment interest from August 3, 1991 until the day preceding the date
of Judgment and at the legal rate for post-judgment interest from the date of Judgment
until paid.
It is further ORDERED ADJUDGED AND DECREED that the judgment hereby
rendered shall bear interest at the rate of ten (10%) percent from the date this judgment
is entered until paid.
This language does not expressly allow postjudgment interest to accrue on prejudgment interest. 
Because prejudgment interest is considered to be part of the damages awarded to the plaintiff, we
construe this judgment to allow Ward postjudgment interest payments on the accrued prejudgment
interest as of the day the judgment was rendered. See Matthews, 721 S.W.2d at 287; Barnard,
863 S.W.2d at 774. Point twenty-two is overruled.
      Finally, in point twenty-three, L&H argues that the court erred in awarding Ward attorney's
fees because the jury was not required to determine if he was a consumer for DTPA purposes and
because the evidence is insufficient to support the amount awarded. L&H stipulated that Ward
was a consumer. Thus, it cannot now argue that Ward failed to establish his consumer status at
trial. Furthermore, Ward presented testimony from two attorneys concerning a reasonable fee for
the work involved in the case. This evidence is sufficient to support the attorney's fee award. 
Point twenty-three is overruled.
      The judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed June 8, 1994
Publish
[WITHDRAWN BY ORDER 7-7-94]