NUMBER 13-05-085-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

GENE BAILEY,                                                         Appellant,

 

                                           v.

 

PHILLIP SMITH D/B/A ELITE TRUCK SALES, 

CHRISTOPHER FLECK, AND
CARMAX 

AUTO SUPERSTORES, INC.,                                      Appellees.

 

 

 

                   On appeal from the 61st District Court

                            of Harris
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

        Before Chief Justice Valdez and Justices Rodriguez
and Castillo

                        Memorandum Opinion by Justice Castillo

 








Appellant, Gene Bailey ("Bailey"), appeals
from the trial court orders granting no-evidence motions for summary judgment
in favor of CarMax Auto Superstores, Inc. ("CarMax"), Phillip Smith
d/b/a Elite Truck Sales ("Elite"), and Christopher Fleck
("Fleck").[1]  He also appeals the trial court order
granting CarMax's motion to strike Bailey's third amended petition as to
CarMax, Elite, and Fleck.  We affirm in
part, reverse in part, and remand. 

I.  Factual
Background








Title to a Mercedes vehicle was originally issued in
Florida in 1995.  The vehicle was
apparently stolen in 1999.  In June 2000,
CarMax appraised the car.  On September
23, 2000, CarMax purchased the vehicle for $22,000, after determining the
person holding title transferred what appeared to be a good title.  CarMax purchased the vehicle as a
"buy-bid"; it already had a wholesaler, Fleck, committed to purchase
the vehicle.  Although Fleck arranged the
purchase of the vehicle from CarMax for $23,000, title transferred on September
25, 2000, directly to Elite and not to Fleck.[2]  Neither Fleck nor Elite were affiliated with
CarMax.  Elite never had any intent to
keep the vehicle.  Fleck contacted the
financing person for Roland Jackson ("Jackson") and Derrick Taylor
("Taylor"), d/b/a Integrity Imports Enterprise, a/k/a Integrity
Motors (collectively "Integrity").[3]  On October 10, 2000, Elite sold the vehicle
and transferred title to Integrity for $26,500.[4]  

In December 2000, Bailey paid $34,480.65 to purchase
the vehicle from Integrity.  Bailey
received money for his trade-in vehicle and financed the balance of the
purchase price through his firefighters union. 

With each of these transactions, good and valid
title appeared to transfer with the vehicle and, indeed, Bailey received a
Texas title.  However, Bailey learned the
vehicle was stolen when the Houston police department recovered it from him in
April 2001.

After Bailey learned the car had been stolen, he
notified Integrity in May 2001. 
Integrity notified Elite, which notified CarMax.  CarMax refunded $23,000 to Elite, with the
intent that it ultimately reach Bailey; Elite refunded $26,500 to Integrity,
with the same intent that it ultimately be paid to Bailey.  However, Integrity gave the check to MRD[5]
which deposited the money; none was transferred to Bailey.  

II. 
Procedural Background








In November 2001, Bailey brought suit against
Integrity, Elite, and CarMax.  Bailey
brought claims for breach of contract and conversion against Integrity.  He brought claims for breach of express and
implied warranty of title, Deceptive Trade Practices Act ("DTPA"),
negligent misrepresentation, negligence and gross negligence, and fraud against
Integrity, Elite, and CarMax.

On June 28, 2002, a default judgment was entered in
favor of Bailey as against Taylor and Jackson, individually and d/b/a Integrity
Imports.  Neither ever answered or
appeared in the suit.  Damages, attorney
fees, and costs were left to be determined with the remainder of the action.  

Beginning in fall 2002, CarMax and Elite each filed
motions for summary judgment.  Subsequent
to the filing of these motions for summary judgment but prior to any ruling
thereon, Bailey filed a first amended petition adding Fleck as a defendant, and
adding (1) a cause of action for negligence per se for violation of the Texas
Certificate of Title Act as to CarMax, Elite, and Fleck, and (2) a cause of
action for civil conspiracy as between Fleck and Elite.  Fleck was also named as a defendant to the
causes of action for breach of express and implied warranty of title, DTPA,
negligent misrepresentation, negligence and gross negligence, and fraud.  

On October 24, 2002, the trial court, in separate
orders, granted summary judgment in favor of CarMax and Elite as to all claims
brought by Bailey.  These orders were
effective as to all claims raised in the original petition, but new causes of
action raised in the first amended petition remained outstanding.  








On December 26, 2002, CarMax filed a second motion
for summary judgment addressing the new cause of action against it for negligence
per se.  On December 31, 2002, Elite
similarly filed a second motion for summary judgment addressing Bailey's claims
against it for negligence per se and civil conspiracy.  Fleck filed his no-evidence motion for
summary judgment as to all claims against him on January 31, 2003.  On December 7, 2002, Bailey filed a second
amended petition adding MRD as a defendant for the same causes of action
brought against Integrity, including conversion.[6]  

In January 2004, the trial court entered three
orders granting summary judgment in favor of CarMax, Elite, and Fleck, as to
all claims brought by Bailey.[7]  None of the trial court's orders on summary
judgment specify the grounds for the rulings.[8]


Trial between Bailey and MRD, the only remaining
defendant, was set for November 29, 2004. 
On November 17, 2004, Bailey filed a third amended petition in which he
included a new cause of action against CarMax, Elite, Fleck, Integrity, and MRD
for "money had and received."  This
third amended petition was ordered stricken on November 29, 2004, as being a
surprise and prejudicial on its face. 
Trial proceeded between Bailey and MRD, and the jury returned a verdict
of no liability for MRD.[9]  The jury also assessed liquidated
damages.  The trial court entered its
final judgment on December 28, 2004. 
This appeal followed.  








III.  Issues
on Appeal

Bailey appeals the trial court orders granting
no-evidence motions for summary judgment in favor of CarMax (issue one), Elite
(issue three), and Fleck (issue four). 
In issue two, he appeals the trial court order granting CarMax's motion
to strike his third amended petition as to CarMax, Elite, and Fleck. 

IV.  Analysis

 

A.  The Orders
Granting Summary Judgment

 

1.  Standard of Review

The function of
summary judgment is to eliminate patently unmeritorious claims and defenses,
not to deprive litigants of the right to a jury trial.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64,
68 (Tex. 1972); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003,
no pet.).  On appeal, the standard of
review for the grant of a motion for summary judgment is determined by whether
the motion was brought on no‑evidence or traditional grounds.  See
Tex. R. Civ. P. 166a(i), (c); Alaniz, 105 S.W.3d at 344; Ortega
v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.BCorpus Christi 2003,
no pet.) (op. on reh'g).  








A no‑evidence
motion for summary judgment asserts that there is no evidence of one or more
essential elements of a claim on which the adverse party will bear the burden
of proof at trial.  Tex. R. Civ. P. 166a(i); Alaniz,
105 S.W.3d at 344; Scripps Tex. Newspapers, L.P. v. Belalcazar, 99
S.W.3d 829, 840 (Tex. App.BCorpus Christi 2003,
pet. denied).  This type of motion must
specifically identify the elements of the claim for which there is no
evidence.  Meru v. Huerta, 136
S.W.3d 383, 386 (Tex. App.BCorpus Christi 2004,
no pet.).  Conclusory motions or general
no-evidence challenges to an opponent's case are not appropriate under this
rule.  Id. at 387.  

We apply the same
legal‑sufficiency standard of review to a no‑evidence summary
judgment as we apply to a directed verdict. 
Alaniz, 105 S.W.3d at 344; Belalcazar, 99 S.W.3d at
840.  "Like a directed verdict,
then, the task of the appellate court is to determine whether the plaintiff has
produced any evidence of probative force to raise fact issues on the material
questions presented."  Belalcazar,
99 S.W.3d at 840.  








The movant has no
burden to attach any evidence to a no‑evidence motion for summary
judgment.  See Tex. R. Civ. P. 166a(i); Ortega,
97 S.W.3d at 772.  The non‑movant
bears the entire burden of producing evidence to defeat a no‑evidence
motion for summary judgment.  Alaniz,
105 S.W.3d at 344.  To raise a genuine
issue of material fact, all that is required of the non‑movant in
responding to a no‑evidence motion for summary judgment is to produce a
scintilla of probative evidence.  Alaniz,
105 S.W.3d at 344; Ortega, 97 S.W.3d at 772.  "Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere
surmise or suspicion' of a fact."  Alaniz,
105 S.W.3d at 344; see Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63
(Tex. 1983).  Conversely, more than a
scintilla exists when the evidence "rises to a level that would enable
reasonable and fair‑minded people to differ in their conclusions."  Alaniz, 105 S.W.3d at 344; Ortega,
97 S.W.3d at 772 (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994)). 

A no-evidence summary
judgment will be sustained when (1) there is a complete absence of evidence of
a vital fact, (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the
evidence conclusively establishes the opposite of a vital fact.  City of Keller v. Wilson, 168 S.W.3d
802, 810 (Tex. 2005); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751
(Tex. 2003).  Where the trial court does
not specify the basis for its summary judgment, the appealing party must show
it is error to base it on any ground asserted in the motion.  Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 474 (Tex. 1995); Lewis v. Adams, 979 S.W.2d 831, 833 (Tex. App.BHouston [14th Dist.]
1998, no pet.) (holding that summary judgment must be affirmed where multiple
grounds are asserted and the appellant does not attack all grounds on
appeal).  

2.  Bailey's Evidence








Bailey argues that not
only his immediate seller, Integrity, but also all upstream sellers breached
their duty to convey good title, and in doing so became liable to him under
various theories.  In response to
numerous motions for summary judgment, Bailey tendered evidence designed to
show that paperwork and procedures associated with the initial purchase by
CarMax were inconsistent with CarMax's general practice.  CarMax generally accompanies each purchase
with an "Appraisal Purchase Checklist" form.  In completing this form, the vehicle
registration, title, and owner's driver's license and/or any accompanying power
of attorney are all reviewed for consistency. 
All these documents are required in this process, which is then reviewed
by a manager.  Bailey tendered evidence
to suggest some deviations from CarMax's standard procedures, questioning
whether there was review by a manager or confirmed receipt of the seller's
registration form.  Internal purchase
documentation of CarMax was tendered to show differing addresses for the
owner's purported attorney-in-fact, a discrepancy in mileage of the vehicle,[10]
and two different powers of attorney from the owner to the person effecting the
sale, dated one day apart but executed in two different states. 








Bailey's evidence also
included deposition testimony of a CarMax salesman[11]
and another used car dealer, tendered as an expert, to show that the
discrepancies should have raised "red flags" prompting further
inquiry to verify title information. 
Bailey contends that CarMax's failure to investigate further, in the
face of such discrepancies, constituted negligence.[12]  Bailey contends Elite and Fleck were
similarly negligent, and that the evidence also establishes fact issues with
respect to several other causes of action. 


3.  The Causes of Action and Challenged Elements

a.  Claim for Breach of Express and Implied
Warranty of Title

 

The Uniform Commercial
Code, as adopted by Texas, provides that "there is in a contract for sale
a warranty by the seller that the title conveyed shall be good," and that
"goods shall be delivered free from any security interest or other lien or
encumbrance of which the buyer at the time of contracting has no
notice."  Tex. Bus. & Com. Code Ann. ' 2.312.(a)(2) (Vernon 1994).  A seller therefore breaches the implied
warranty of title where he purports to give good and clear title when he does
not actually have good and clear title.[13]  Id. 









A buyer of a stolen
automobile fails as a matter of law to obtain good title.  Jamison v. Sockwell, 405 S.W.2d 618,
622 (Tex. Civ. App.BDallas 1966, writ
ref'd n.r.e.).  However, section 2.607 of
the business and commerce code provides that once a buyer has accepted goods,
he must within a reasonable time after he discovers or should have discovered
any breach notify the seller of the breach or be barred from any remedy.  See Tex.
Bus. & Com. Code Ann. ' 2.607(c)(1) (Vernon
1994); Lochinvar Corp. v. Myers, 930 S.W.2d 182, 189 (Tex. App.BDallas 1996, no writ)
(observing that this notice requirement is designed to provide the seller an
opportunity to cure any defect).  Under
this statute, some courts of appeals districts in Texas conclude that a buyer
is required to give notice of an alleged breach of warranty to a remote as well
as an immediate seller/manufacturer.  See,
e.g., Wilcox. v. Hillcrest Mem'l Park of Dallas, 696 S.W.2d 423, 424-25
(Tex. App.BDallas 1985), writ
ref'd per curiam, 701 S.W.2d 842 (Tex. 1986);[14]
cf. Vintage Homes, Inc. v. Coldiron, 585 S.W.2d 886, 888 (Tex. App.BEl Paso 1979, no writ)
(holding the notice requirement applies only between buyer and immediate
seller).  The Houston First District
Court of Appeals holds that under section 2.607(c)(1), a buyer is required to
give notice of an alleged breach of warranty not only to the immediate but also
to a remote seller/ manufacturer.  U.S.
Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 199 (Tex. App.BHouston [1st Dist.] 2003,
pet. denied) ("The drafters of the UCC did not read section 2.607 as
referring solely to the relationship between a buyer and an immediate
seller.").[15]  








In summary judgment
motions, both Carmax and Fleck urged that Bailey had no evidence that he had
ever notified either of them of any problem.[16]  Facts reflect Bailey notified only his
immediate seller, Integrity.  Bailey
essentially concedes this point, and instead urges that notice to his immediate
seller is effective as to all those up the chain of title, and that no
additional notice is required. 

We agree with our
sister courts in Dallas and Houston, following the plain reading of the statute
and concluding that no policy concerns are presented in this case requiring
that we advance a remedy additional to that available against an immediate seller,
where only that immediate seller has been notified.  See U.S. Tire-Tech, 110 S.W.3d at 199;
Wilcox, 696 S.W.2d at 424-25.








We note that in its
first motion for summary judgment, Elite argued only that it could not have
breached any express warranty because it never appeared in the chain of title
and only served as a financier of the vehicle. 
This was patently incorrect; summary judgment evidence tendered by
Bailey clearly controverted that claim and reflected that Elite held title and
was not solely a financier.[17]  A supplement to the motion for summary
judgment was filed, but attached only an affidavit of Smith which did not
address the issue of notice.  No amended
motion for summary judgment appears in the record in which Elite raised any
other argument as to this claim.  There
is no mention of lack of notice in Elite's pleadings.[18]

It is the movant's
burden in a no-evidence motion for summary judgment to identify the challenged
element of the claim.  Meru, 136
S.W.3d at 386.  A non-movant has no
burden to bring forward evidence on a non-challenged element of a claim.  Alaniz, 105 S.W.3d at 344 (finding the
question to be whether the plaintiff produced any evidence of probative force
to raise fact issues on the material questions presented). 

[T]he proper procedure
to raise a new no‑evidence point is to file an amended or supplemental no‑evidence
motion for summary judgment specifically setting forth the new element or
elements of the non‑movant's cause of action or affirmative defense for
which it is claimed no evidence has been presented[;] . . . a new element
asserted as a basis for a no‑evidence motion may not first be presented
in a reply to a response to a no‑evidence motion for summary judgment.

 








Larue v. Chief Oil
& Gas, L.L.C., 167 S.W.3d 866, 876 (Tex. App.BFort Worth 2005, no
pet.) (citing Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex.
1993)).[19]  Rule 166a(i) provides that the "motion
must state the elements as to which there is no evidence."  This element was not identified by Elite.[20]  Although the argument is raised in Elite's appellate
brief, it was not placed before the trial court.  We therefore conclude that the basis for
granting Elite's no-evidence motion for summary judgment could not properly
have been the absence of notice. 

Summary
judgment may not be affirmed on a basis not raised in Elite's motion, and
evidence was tendered to controvert the basis which was raised before the trial
court.  Issues not expressly presented to
the trial court by written motion or response to the motion for summary
judgment cannot be considered as grounds for reversal.  Tex.
R. Civ. P. 166(a); McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 341 (Tex. 1993).  We may only
consider the record as it existed at the time of the motion and may not
consider sua sponte grounds for reversing the judgment.  San Jacinto River Authority v. Duke,
783 S.W.2d 209, 210 (Tex. 1990) (citing Central Education Agency v. Burke,
711 S.W.2d 7, 9 (Tex. 1986)). 
Accordingly, on the record before us, we cannot uphold summary judgment
granted in favor of Elite on the claim for breach of warranty of title. 

We
overrule Bailey's issues one, three, and four as to the claim for breach of
warranty as it relates to CarMax and Fleck. 
We sustain Bailey's issues one, three and four as to the claim for
breach of warranty as it relates to Elite. 









b.  Negligence Per Se

Bailey's
claim for negligence per se is based upon alleged violations of the Texas
Certificate of Title Act (the "Act").  See Tex.
Transp. Code Ann. ' 501.001 et seq.
(Vernon 1999 and Supp. 2005).  Bailey
specifically references section 503.033(b)(2)(B) of the Act, summarily stating
in his brief that since CarMax failed to deliver good title, the act was
violated.  See id. ' 503.033(b)(2)(B)
(Vernon 1999).

CarMax
and Elite both contend that no tort duty arises under the Act and, further,
there was no evidence of duty owed by either of them to Bailey (no
foreseeability).[21]  They urge this act was never meant to enlarge
the tort liability of a seller.  CarMax
also argues that Bailey sustained only economic loss for the value of the
contract with Integrity. 








Section
503.033(b)(2)(B) of the Act, relied upon by Bailey, relates to the issuance or
renewal of a motor vehicle dealer's distinguishing number and requires that the
applicant have purchased a properly executed security bond.  Id. ' 503.033(b)(2)(B).  That bond must be conditioned upon a payment
and the transfer by the applicant of good title to each motor vehicle the
applicant offers for sale.  Id.  Nothing
in this section creates an avenue for recourse, other than to state that a
surety company can be liable in the event damages are awarded against an
automobile dealer for failure to deliver either payment or title.[22]  








Bailey
tenders no authority to lead us to conclude that the Act was designed to
provide a remedy to a consumer in addition to that already provided for under
other available law.  The legislative
intent behind enactment of the Act was indeed to "lessen and prevent theft
of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles
without disclosure of existing liens." 
Hudson Buick v. Gooch, 7 S.W.3d 191, 197 (Tex. App.BTyler 1999, pet. denied)
(citing Najarian v. David Taylor Cadillac, 705 S.W.2d 809, 811 (Tex.
App.BHouston [1st Dist.]
1986, no writ)).  However, the Act
neither provides for nor prohibits penalties for persons who have transferred
interest in motor vehicles without compliance with its provisions thereof.  Id. 
Moreover, "[t]he Certificate of Title Act was never intended to
enlarge the tort liability of a seller." 
Id. (citing Rush v. Smitherman, 294 S.W.2d 873, 878 (Tex.
Civ. App.BSan Antonio 1956, writ
ref'd)).  "The Act does not provide
for an independent cause of action for violations; instead, it renders void any
transfer of title until the requirements of the Act are met."  Gourrier v. Joe Meyers Motors, Inc.,
115 S.W.3d 570, 575 (Tex. App.BHouston [14th Dist.]
2002, no pet.) (finding no showing of any legislative intent to provide a civil
cause of action for any violations).  If
the legislature grants private standing to bring an action for violation of a
statute, it must clearly do so.  Brown
v. De La Cruz, 156 S.W.3d 560, 566 (Tex. 2004).  Legislative silence may reflect many things,
including implied delegation to the courts or administrative agencies, lack of
consensus, oversight, or mistake.  Id.  Regardless, we do not have authority "to
legislate . . . to fill any hiatus Congress has left."  Id. (citing PPG Indus., Inc. v.
JMB/Houston Centers Partners Ltd. P'ship, 146 S.W.3d 79, 84 (Tex. 2004)). 

We
conclude no authority exists to support the interpretation that the Act
encompasses or contemplates a civil cause of action.  We overrule Bailey's issues one, three, and
four as to the cause of action of negligence per se as to CarMax, Elite, and
Fleck. 

c.  Negligence and Gross Negligence 

 








Recovery
under a claim for common‑law negligence requires that a plaintiff
establish  (1) a legal duty, (2) a breach
of that duty, and (3) damages proximately resulting from the breach.  Mellon Mortg. Co. v. Holder, 5 S.W.3d
654, 665 (Tex. 1999).  A defendant is
grossly negligent when a plaintiff establishes by clear and convincing evidence
that the act or omission complained of involved an extreme degree of risk,
considering the probability and magnitude of the potential harm to others (the
objective element), and that the defendant was aware of the risk involved, but
nevertheless proceeded in conscious indifference to the rights, safety, or
welfare of others (the subjective element). 
Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp., 136
S.W.3d 227, 23 (Tex. 2004) (citing Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 23 (Tex. 1994)).  A finding of
negligence is a prerequisite to any finding of gross negligence.  Wright v. Gifford-Hill & Co., 725
S.W.2d 712, 714 (Tex. 1987); Shell Oil Co. v. Humphrey, 880 S.W.2d 170,
174 (Tex. App.BHouston [14th Dist.]
1994, writ denied).  

The
threshold inquiry in a negligence case is whether the defendant owes a legal
duty to the plaintiff.  Centeq Realty,
Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).  CarMax, Elite, and Fleck argue that they owe
no duty to Bailey as a remote purchaser; the crux of their argument is the
absence of foreseeability.[23]  They urge it was unforeseeable that a stolen
vehicle would be either purchased or financed where appropriate procedures were
followed and there was a title which appeared "so valid on its face, that
even the State of Texas accepted it as good title."[24]








It is firmly
established in Texas that the existence and elements of a common law duty are
ordinarily legal issues for the court to decide, whether the duty (for products
liability) is not to distribute a defective product or (for negligence) to act
with ordinary care. . . .  The
considerations include social, economic, and political questions and their
application to the facts at hand.  We
[weigh] the risk, foreseeability, and likelihood of injury against the social
utility of the actor's conduct, the magnitude of the burden of guarding against
the injury, and the consequences of placing the burden on the defendant. . .
.  "[W]hether a legal duty exists,
including the foreseeability element, is typically a legal question."

 

Humble Sand &
Gravel, Inc. v. Gomez, 146 S.W.3d 170, 181-82 (Tex. 2004).

Foreseeability
is not solely a component of duty; it can also be an element of proximate
cause, which also encompasses cause in fact (or substantial factor).  D. Houston, Inc. v. Love, 92 S.W.3d
450, 454 (Tex. 2002).  Foreseeability
exists when "the actor as a person of ordinary intelligence should have
anticipated the dangers his negligent act creates for others."  Id. (citing El Chico Corp. v. Poole,
732 S.W.2d 306, 313 (Tex. 1987)).  

Here,
Bailey tenders evidence to raise a fact question as to whether CarMax, Elite,
or Fleck indeed followed proper procedure or were negligent in conducting their
examination and approval of the title. 
We must determine whether any such negligence, if it existed,
constituted a breach of a duty to a remote purchaser.[25]














Our
sister court has reviewed whether a seller higher in the chain of title could
have breached a warranty of title or owed a duty not to be negligent to a later
purchaser.  See Perry d/b/a Car Town
v. Breland d/b/a Darrell Breland Motors, 16 S.W.3d 182, 191(Tex. App.BEastland 2000, pet.
denied).  That court concluded that it
was "not prepared at this time to say that this duty does not extend to
remote buyers of the vehicle."  Perry
cites to Nobility Homes of Texas for the proposition that lack of
privity between a plaintiff and a remote vendor will not preclude a claim for
breach of warranty.  See id. (citing
Nobility Homes of Tex., Inc. v. Shivers, 557 S.W.2d 77, 81 (Tex.
1997)).  Bailey, seizing on this
principle that privity of contract is not required, relies on 3Z Corp. v.
Stewart Title Guar., Co., 851 S.W.2d 933, 937 (Tex. App.BBeaumont 1993, writ
denied) to state summarily that appellees "owed a duty to all subsequent
purchasers of the vehicle" because each "endorsed the title and made
representations and certification of title to the vehicle."  3Z Corp. was brought under the DTPA
against a title company for specific representations it made with respect to
title on a parcel of real property.  Id.  The court concluded that while the title
company had no duty to discover and disclose a title defect, it did have a duty
to know if its representations were true, and it could be liable under DTPA for
affirmatively misrepresenting the absence of any title defect even if it had no
affirmative duty to discover and disclose the defect.  Id.  However, no remote seller was involved in 3Z
Corp.[26]  The case simply does not stand for the
proposition that a remote seller may be liable to an end purchaser.  The case is further distinguishable in that Stewart
Guaranty, as a potential indemnitor, had no involvement whatsoever in assessing
or certifying condition of the title at any step in the process, or any role in
failing to make an appropriate disclosure. 
Id. at 937-38.  Such is not
the case here, where CarMax, Elite, and Fleck were all at some point
affirmatively involved in assessing and/or representing (even if impliedly) the
condition of the title. 








We
also address the element of proximate cause. 
See Gen. Motors Corp. v. Saenz, 873 S.W.2d 353, 357 (Tex.
1993).  Proximate cause consists not only
of foreseeability, but also cause in fact. 
Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995)
(citing Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992)).  Cause in fact means that the defendant's act
or omission was a substantial factor in bringing about the injury which would
not otherwise have occurred.  Id.
(citing Prudential Ins. Co. v. Jefferson Assocs., 896 S.W.2d 156, 161
(Tex. 1995)).  There can be concurrent
proximate causes of an accident.  Travis,
830 S.W.2d at 98 (citing El Chico Corp., 732 S.W.2d at 313; Strakos
v. Gehring, 360 S.W.2d 787, 789 (Tex. 1962)).  "All persons whose negligent conduct
contributes to the injury, proximately causing the injury, are liable."  Id. 

However,


at some point in the
causal chain, the defendant's conduct or product may be too remotely connected
with the plaintiff's injury to constitute legal causation. . . .  The law does not hold one legally responsible
for the remote results of his wrongful acts and therefore a line must be drawn
between immediate and remote causes. 

 

Union Pump, 898 S.W.2d at 775
(citing City of Dallas v. Maxwell, 248 S.W. 667, 670 (Tex. Comm'n App.
1923, holding approved)).

In order to be a legal
cause of another's harm, it is not enough that the harm would not have occurred
had the actor not been negligent. . . . 
The negligence must also be a substantial factor in bringing about the
plaintiff's harm.  The word
"substantial" is used to denote the fact that the defendant's conduct
has such an effect in producing the harm as to lead reasonable men to regard it
as a cause, using that word in the popular sense, in which there always lurks
the idea of responsibility, rather than in the so‑called
"philosophic sense," which includes every one of the great number of
events without which any happening would not have occurred. 

 

Id. at 776 (citing Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 472 (Tex. 1991) (quoting Restatement (Second) of Torts ' 431 cmt. a
(1965)).  Legal cause is not established
if the defendant's conduct or product does no more than furnish the condition
that makes the plaintiff's injury possible. 
Id.  

We
conclude that no duty was owed to an ultimate purchaser in the circumstances of
this case.  We overrule Bailey's issues
one, three, and four, as they pertain to his claim for negligence with respect
to CarMax, Elite, and Fleck.  

d.  Negligent Misrepresentation








The
elements of a cause of action for negligent misrepresentation are (1) the
representation is made by a defendant in the course of his business, or in a
transaction in which he has a pecuniary interest; (2) the defendant supplies
"false information" for the guidance of others in their business; (3)
the defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and (4) the plaintiff suffers pecuniary loss by
justifiably relying on the representation. 
Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n.24 (Tex.
2002) (citing Fed. Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex.
1991)).  A claim for negligent
misrepresentation does not require knowledge of the falsity or reckless
disregard of the truth or falsity of the representation at the time it was
made, but only a failure to exercise reasonable care in obtaining or
communicating the information.  See
Fed. Land Bank, 825 S.W.2d at 442. 

Texas
has adopted section 552 of the Restatement
(Second) of Torts and the theory of negligent misrepresentation.  McCamish, Martin, Brown & Loeffler v.
F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999) (citing Restatement (Second) of Torts ' 552 (1977)
(addressing the issue in the context of misrepresentations by a law
firm)).  This theory permits plaintiffs
who are not parties to a contract to recover from the contracting parties:  

Under the tort of
negligent misrepresentation, liability is not based on the breach of duty a
professional owes his or her clients or others in privity, but on an
independent duty to the nonclient based on the professional's manifest
awareness of the nonclient's reliance on the misrepresentation and the
professional's intention that the nonclient so rely. 

 













Id. at 792.[27]  Accordingly, in McCamish, lack of
privity did not preclude a cause of action for negligent misrepresentation
brought by a nonclient.  Nevertheless,
the prong of justifiable reliance limits liability "to situations in which
the attorney who provides the information is aware of the nonclient and intends
that nonclient rely on the information." 
Id. at 794.[28]  In other words, the cause of action is
available only when information is transferred to a known party for a known
purpose.  Id.[29]  Such is not the case here, where the record
reflects that no information was transferred by CarMax, Elite, or Fleck to
Bailey.  In their motions for summary
judgment, Carmax, Elite, and Fleck raised as grounds for summary judgment on
the claim of negligent misrepresentation the absence of either any evidence of
a representation to Bailey, or any intent that Bailey be an intended recipient
of any representation.[30]


We
overrule Bailey's issues one, three, and four, as to the claim for negligent
misrepresentation as against CarMax, Elite, and Fleck.  

e.  DTPA

The
DTPA contains a list, commonly referred to as the "laundry list," of
actions declared to constitute false, misleading, or deceptive acts.  Tex.
Bus. & Com. Code Ann. ' 17.46(b) (Vernon
Supp. 2005); Checker Bag Co. v. Washington, 27 S.W.3d 625, 634 (Tex.
App.BWaco 2000, pet.
denied) (citing Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 386 (Tex.
2000)).  Private parties are empowered to
maintain an action for damages, whether economic or for mental anguish, where a
laundry‑list violation is the producing cause.  Tex.
Bus. & Com. Code Ann. ' 17.50(a)(1) (Vernon
Supp. 2005).  To succeed in a DTPA
laundry-list action, a plaintiff must show that (1) he is a consumer, (2) the
defendant engaged in false, misleading, or deceptive acts, (3) on which the
plaintiff relied, and (4) these acts constituted a producing cause of the
consumer's damages.  Henry Schein,
102 S.W.3d at 705 (citing Tex. Bus.
& Com. Code Ann. ' 17.50(a)(1); Checker
Bag , 27 S.W.3d at 634).  








A
producing cause is "an efficient, exciting, or contributing cause, which
in a natural sequence, produced injuries or damages complained of, if
any."  Union Pump, 898 S.W.2d
at 775.  Common to both proximate and
producing cause is causation in fact, including the requirement that the
defendant's conduct or product be a substantial factor in bringing about the
plaintiff's injuries.  Id.  While foreseeability is an element of proximate
cause, it is not of producing cause.  Id.


CarMax,
Elite, and Fleck urge there is no evidence of either reliance by Bailey, or
that any of their conduct was a producing cause of Bailey's damages.[31]  They urge there is no evidence that any
conduct by them was "inextricably intertwined" with the consumer
transaction in which Bailey purchased the vehicle.  They point to Bailey's acknowledged ignorance
of their being in the chain of title prior to the reclamation of the vehicle by
the police.  Indeed, 

Although the DTPA was
designed to supplement common‑law causes of action, we are not persuaded
that the Legislature intended the DTPA to reach upstream manufacturers and
suppliers when their misrepresentations are not communicated to the consumer.  Despite its broad, overlapping prohibitions,
we must keep in mind why the Legislature created this simple, nontechnical
cause of action:  to protect consumers in
consumer transactions.  Consistent with
that intent, we hold that the defendant's deceptive conduct must occur in
connection with a consumer transaction.

 

Amstadt v. U.S. Brass
Corp.,
919 S.W.2d 644, 649 (Tex. 1996).  Amstadt
rejected DTPA claims against upstream manufacturers where none of their
representations reached the consumer, while upholding the viability of claims
for negligence.  Id. at 647. 








CarMax,
Elite, and Fleck also urge that since their conduct was not "inextricably
intertwined" with the sale to Bailey, they cannot be liable.  "Inextricably intertwined" does not
add a theory or condition of liability under the DTPA; instead, it is a means
of addressing whether conduct was a "producing cause of the consumer's
damages."  Qantel Bus. Sys., Inc.
v. Custom Controls Co., 761 S.W.2d 302, 305 (Tex. 1998).  "We find no authority for shifting the
focus of a DTPA claim from whether the defendant committed a deceptive act to
whether a product that was sold caused an injury."  Amstadt, 919 S.W.2d at 650.  In PPG Indus., the Supreme Court
determined that a right to a DTPA claim could not be obtained by virtue of an
assignment from a prior purchaser.  PPG
Indus., 146 S.W.3d at 87, n.27. 
Moreover, it concluded that Amstadt appeared to overrule the
earlier Gupta v. Ritter Homes, Inc., 646 S.W.2d 168 (Tex. 1983), in
which that court held that an implied warranty asserted under the DTPA could be
brought by a subsequent purchaser.  PPG
Indus., 146 S.W.3d at 87 n.27 (citing Amstadt, 919 S.W.3d at 649-50;
Gupta, 646 S.W.2d at 169).  The PPG
Indus. court observed: 

[I]n Amstadt v.
U.S. Brass Corp., we held downstream purchasers of non‑mobile homes
could not bring DTPA claims against remote manufacturers and suppliers of a
defective plumbing system, because the deceptive acts alleged were not
committed against or communicated to them in connection with their own
purchases.  Recognizing the similarity to
this case, JMB asserted no DTPA claims in its own right, as it had no
connection with PPG's original Twindows sale, and never saw any PPG advertisements
or warranties before it bought the building.

 








PPG Indus., 146 S.W.3d at 88
(citing Amstadt, 919 S.W.2d at 649-50) (noting the clear distinction
between DTPA and warranty claims, by which a downstream buyer can sue a remote
seller for breach of an implied warranty, but cannot sue under the DTPA).  For the same reasons, we conclude that the
sales by CarMax, Elite, and Fleck, and any representations associated
therewith, in light of the absence of any evidence that Bailey had knowledge of
them, cannot form the basis of a DTPA claim for Bailey.  We overrule Bailey's issues one, three, and
four with respect to his DTPA claim as against CarMax, Elite, and Fleck.  

f.  Fraud 

The
elements of a cause of action for fraud include (1) that a material
representation was made, (2) the representation was false, (3) when the
representation was made, the speaker knew it was false or made it recklessly
without any knowledge of the truth and as a positive assertion, (4) the speaker
made the representation with the intent that the other party should act upon
it, (5) the party acted in reliance on the representation, and (6) the party
thereby suffered injury.  Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 211 n.45 (Tex. 2002) (quoting In
re FirstMerit Bank, 52 S.W.3d 749, 758 (Tex. 2001)).  More particularly, the speaker must have made
the false statement with the intent that the recipient rely upon it, and the
recipient must then have acted on that reliance.  Green Int'l v. Solis, 951 S.W.2d 384, 390
(Tex. 1997).  








CarMax,
Elite and Fleck contend there is no evidence that any of them made any
statement directly to Bailey, intended that Bailey rely on any statement by
them, had knowledge of any false statement or that title was defective, or that
any representations that were made about the condition of the title were given
in the face of information that transformed them into a reckless disregard for
the truth in the face of an extreme risk. 

Bailey
urges that false statements were made in reckless disregard for the truth, and
that the appellees can be liable for "indirect fraud," relying on Atlantic
Richfield Co. v. Misty Prod., Inc., 820 S.W.2d 414 (Tex. App.BHouston [14th Dist.]
1991, writ denied).  However, Misty
Prod. acknowledges only that a person can indirectly make a false
representation by making it to another "with the intent that it be
repeated to the intended party for the purpose of deceiving him."  Id. at 418.  Additionally, there must be the requisite
intent to deceive the particular individual. 

We
agree there is no evidence that CarMax, Elite, or Fleck, whether or not they
were negligent, knew of the falsity of any statements made with respect to the
vehicle's condition of title, or disregarded known facts such that they
recklessly disregarded the truth. 
Further, there is no evidence of intent on the part of CarMax, Elite, or
Fleck to deceive Bailey or any other potential purchaser.  We overrule Bailey's issues one, three, and
four as they pertain to his cause of action for fraud as to CarMax, Elite, and
Fleck. 

g.  Civil Conspiracy








Bailey
alleged that Elite and Fleck conspired together to violate the certificate of
title act, asserting they had knowledge of, agreed to, and intended to violate
the act.   Bailey contended in his second
amended petition that Elite and Fleck violated the act by embarking on a course
of action permitting Fleck to buy and sell vehicles in Texas without a license,
thereby evading the statutory requirements to obtain a surety bond and maintain
records.  Bailey alleged that they
actively violated the act by failing to secure title to the vehicle in Fleck's
name and then reassigning the title to Integrity and/or MRD under Elite's
dealer number, when in fact Fleck was the owner whose name and signature was
required to transfer title.  Bailey
contends that these acts proximately caused his damages.  








A
civil conspiracy is a combination by two or more persons to accomplish an
unlawful purpose by unlawful means.  Operation
Rescue‑Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.,
975 S.W.2d 546, 553 (Tex. 1998). 
Elements of a cause of action for civil conspiracy include (1) two or
more persons, (2) an object to be accomplished, (3) a meeting of the minds on
the object or course of action, (4) one or more unlawful, overt acts, and (5)
damages as a proximate result.  Chon
Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005) (citing Juhl v. Arlington,
936 S.W.2d 640, 644 (Tex. 1996)); Baty v. Protech Ins. Agency, 63 S.W.3d
841, 864 (Tex. App.BHouston [14th Dist.]
2001, pet. denied).  Because the
defendant's liability depends on its participation in some underlying tort for
which the plaintiff seeks to hold the defendant liable, conspiracy is
considered a derivative tort.  Baty,
63 S.W.3d at 864 (citing Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex.
1996)).  The plaintiff must show that the
defendant was liable for some underlying tort. 
Id. (citing Trammel Crow Co. No. 60 v. Harkinson, 944
S.W.2d 631, 635 (Tex. 1997)).  However,
negligence will not support a claim for conspiracy; civil conspiracy requires a
specific intent and the parties must be aware of the harm or wrongful conduct
at the inception of the combination or agreement.  Triplex Communications Inc. v. Riley,
900 S.W.2d 716, 719 (Tex. 1995). 

CarMax,
Smith, and Fleck contend there was not evidence that (1) any violations of any
of them were made in connection with Bailey's purchase (based on the existence
of the intervening sales), (2) their individual conduct was a producing cause
of Bailey's damages, or (3) any of them knowingly or intentionally committed
any alleged violations.








Bailey
alleges the acts were the proximate cause of his injuries; appellees contend
they were not a producing cause of Bailey's injuries.  The elements of conspiracy require that the
wrongful conduct be the proximate cause of injury.  Ins. Co. of N. Am. v. Morris, 981
S.W.2d 667, 675 (Tex. 1998) (citing Massey v. Armco Steel Co., 652
S.W.2d 932, 934 (Tex. 1983)).  As we
noted above, proximate cause consists not only of foreseeability, but also
cause in fact.  Union Pump Co.,
898 S.W.2d at 775 (noting that cause in fact means that the defendant's conduct
was a substantial factor in bringing about the injury which would not otherwise
have occurred).  Id.  Here, Bailey was required to tender evidence
that Fleck's failure to secure his own dealer's license and bond was a
substantial factor in bringing about the sequence of events that damaged
Bailey.  We remain mindful that "at
some point in the causal chain, the defendant's conduct or product may be too
remotely connected with the plaintiff's injury to constitute legal
causation;" a party is not legally responsible for remote results of his
wrongful acts and a line must be drawn between immediate and remote causes.  Id. 
We conclude that in this instance, Fleck's failure to obtain a dealer's
license or bond, even if he was required to possess such, was too remote to
constitute a legal cause of the sequence involving the passage of title of a
stolen vehicle.  

We
further conclude there is less than a scintilla of evidence of either the
requisite "meeting of the minds," or a specific intent to violate the
certificate of title act.  "Less
than a scintilla of evidence exists when the evidence is 'so weak as to do no
more than create a mere surmise or suspicion' of a fact."  Alaniz, 105 S.W.3d at 344.  

One without knowledge
of the object and purpose of a conspiracy cannot be a co‑conspirator; he
cannot agree, either expressly or tacitly, to the commission of a wrong which
he knows not of.  In 15A C.J.S. Conspiracy ' 1(2), p. 599, it is
said that one of the essential elements required to establish a civil
conspiracy is "a meeting of the minds on the object or course of
action." And, of course, one without knowledge of a conspiratorial plan or
scheme to injure another by the commission of a particular wrong cannot share
the intent to injure such other.

 

Laxson v. Giddons, 48 S.W.3d 408, 410
(Tex. App.BWaco 2001, pet.
denied) (citing 

Schlumberger Well
Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 856-57 (Tex.
1968)).  We overrule Bailey's first,
third, and fourth issues as they relate to his cause of action for civil
conspiracy as to Elite and Fleck.  

B. Issue TwoBThe Order Striking the
Third Amended Petition

In
his second issue, Bailey asserts that the trial court erred in striking his
third amended petition.  We review a
trial court's decision to strike an amended petition or trial amendment for
abuse of discretion.  Tex. R. Civ. P. 63; Hardin v. Hardin,
597 S.W.2d 347, 349-50 (Tex. 1980); J.M. Huber Corp. v. Santa Fe Energy
Resources, Inc., 871 S.W.2d 842, 844 (Tex. App.BHouston [14th Dist.]
1994, no writ); City of Austin v. Houston Lighting & Power Co., 844
S.W.2d 773, 783 (Tex. App.BDallas 1992, writ
denied). 








In reviewing a trial court
decision under an abuse of discretion standard, we determine whether the trial
court acted without reference to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).  The
exercise of discretion is within the sole province of the trial court, and an
appellate court may not substitute its discretion for that of the trial
judge.  Johnson v. Fourth Ct. App.,
700 S.W.2d 916, 918 (Tex. 1985).  Rather,
an abuse of discretion occurs only when the trial court reaches a decision that
is "so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law."  Id. at
917. 

A
trial court has no discretion to refuse an amendment that is filed more than
seven days before the date of trial unless (1) the opposing party
presents evidence of surprise or prejudice, or (2) the amendment asserts a new
cause of action or defense, and thus is prejudicial on its face."  Chapin & Chapin, Inc. v. Texas Sand &
Gravel Co., 844 S.W.2d 664, 665 (Tex. 1992).  In this instance, the amended petition was
filed November 18, 2004; trial was scheduled to begin November 29, 2004.  The amendment was thus filed more than seven
days before trial.  However, the petition
added another cause of action against CarMax, Elite, Fleck, Integrity, and MRD
for "money had and received / assumpsit;" Bailey argued that all had
received monies from the sale of the vehicle which properly belonged to Bailey.
[32]









At
the time the third amended petition was filed, all other causes of action
against CarMax, Elite, and Fleck had already been disposed of by summary
judgment in favor of them.  Summary
judgments in favor of CarMax and Elite had been entered on October 24, 2002 and
January 29, 2004, and in favor of Fleck in January 2004.[33]  Since January 2004, CarMax, Elite and Fleck
had no participation in the suit until the filing of the third amended
petition.  In its motion to strike the
amended petition, CarMax asserted surprise and that the petition was
prejudicial on its face because it raised an entirely new cause of action.  See Chapin, 844 S.W.2d at 665.  

The
new petition was prejudicial on its face. 
Id.  Further, CarMax,
Elite, and Fleck had not participated in the suit for the preceding ten months
and had not participated in and had no knowledge of any intervening
discovery.  They alleged surprise.  We conclude that the trial court did not
abuse its discretion in granting the motion to strike the third amended
petition in the circumstances.  Chapin,
844 S.W.2d at 665; Hardin, 597 S.W.2d at 350.  We overrule Bailey's second issue on appeal.

V.  Conclusion

          We affirm the trial court's order
striking Bailey's third amended petition. 
We affirm the trial court's orders granting summary judgment in favor of
CarMax and Fleck in all respects.  We
affirm the trial court order granting summary judgment in favor of Elite except
as to the breach of warranty claim; we reverse that order as to the breach of
warranty claim against Elite and remand for further proceedings consistent with
this opinion.                                                        

 

ERRLINDA CASTILLO

Justice

 

 

Memorandum Opinion
delivered and filed

this the 18th day of
May, 2006.

 











[1] On appeal, Elite and Fleck have
filed a joint brief in which they do not differentiate between their
arguments.  





[2] Fleck asserted he was acting as
agent for Elite and had conducted several similar purchases in the past on its
behalf.  Elite agreed it did business
with Fleck on occasion.





[3] The financing person for Integrity
is also the owner of MRD Investments, Inc. ("MRD").





[4] Integrity similarly has no
affiliation with CarMax.  





[5] The record contains little
relating to MRD's role.  The money
refunded by Elite was apparently transferred to MRD and used by Integrity to
finance the purchase of another vehicle which was offered to Bailey to replace
the Mercedes.  Bailey declined.  Bailey was ultimately paid $35,596.68 by his
insurance company, Geico, which included the purchase price and interest
paid.  Geico filed a petition in
intervention in March 2004, asserting a subrogation claim. 





[6] In October 2002, CarMax filed a
third party petition against MRD for contribution and indemnity, unjust
enrichment, and money had and received. 
In June 2003, CarMax filed a motion for partial summary judgment against
MRD, which was granted in July 2003. 
CarMax was awarded $23,000 (the amount of money refunded by Carmax to
Elite, which was intended for Bailey), plus interest and attorney fees.





[7] Summary judgment in favor of
CarMax was granted as against Geico in May 2004. 





[8] In May 2004, an order for default
judgment was entered in favor of CarMax as to liability and damages as against
Roland Jackson.  In July 2004, the trial
court entered an "Interlocutory Default Judgment" in favor of CarMax
as against Taylor as to issues of liability, with damages to be determined at a
later date.  





[9] Bailey brings no issue on appeal
relating to the jury's no-liability verdict in favor of MRD. 





[10] Evidence suggested the
out-of-state title for the five-year-old car presented to CarMax in 2000
reflected only sixty-eight miles on the vehicle.  The mileage certified by both CarMax and
Elite on the September 2000 purchase and sale from CarMax to Elite was 78,619.





[11] This salesman, a senior CarMax
buyer, was not involved in this particular purchase.  He testified he would know such a vehicle
would be resold and that others would rely on CarMax's representation of good
title.  He testified that, had he handled
the paperwork, the "red flags" would have caused him to conduct more
due diligence.  





[12] Expert testimony was tendered to
support Bailey's contention that CarMax failed to meet normal dealer standards
of care.  Bailey's evidence also
reflected that CarMax failed to fill in the mileage on its bills of sale;
Bailey contends this raises a reasonable inference that CarMax knew of a
problem with the title but sold the vehicle anyway.  





[13] An express warranty is created
when a seller states an affirmative fact or promise to a buyer which relates to
goods sold and becomes part of the basis of the bargain.  See Tex.
Bus. & Com. Code Ann. ' 2.313 (Vernon 1994). 
It is undisputed that neither CarMax, Elite, nor Fleck sold the vehicle
to Bailey or had any type of communications with Bailey prior to or respecting
the sale of the vehicle to Bailey. 
Therefore, none of them made an express warranty of title to Bailey, and
we restrict our analysis to implied warranty. 





[14] The Supreme Court expressly
reserved judgment on the question of whether a buyer must notify a remote
seller‑manufacturer of an alleged breach of warranty within a reasonable
time.  See Wilcox v. Hillcrest Mem'l
Park of Dallas, 701 S.W.2d 842, 843 (Tex. 1986) (per curiam).  It has not since decided the issue.  See Compaq Computer Corp. v. Lapray,
135 S.W.3d 657, 674 n.14 (Tex. 2004).  





[15] Bailey urges that comment 4 to
section 2.607 provides that notification requirements are judged differently as
between a remote and an immediate seller. 
However, this comment instead addresses a distinction between a retail
and a merchant buyer, noting that additional time may be encompassed within
what is a "reasonable time" for a lay purchaser or consumer.  See U.S. Tire-Tech, Inc. v. Boeran, B.V.,
110 S.W.3d 194, 199 (Tex. App.BHouston [1st Dist.] 2003, pet. denied).  The U.S. Tire-Tech case also terms
this notice requirement as a condition precedent for a buyer's cause of action,
rather than an affirmative defense.  Id.
at 200.  





[16] It was undisputed that Bailey did
not know that either Carmax or Elite had been holders in the chain of title
until after the Houston police department recovered the vehicle.  However, after Bailey notified Integrity,
information that the car was stolen was passed up to prior owners in the chain
of title.  CarMax took steps to effect a
cure by refunding the purchase price of the vehicle to Elite; Elite similarly
acted to cure by refunding the purchase price to Integrity.  Evidence reflected that both CarMax and Elite
intended that money to reach Bailey.  





[17] Bailey tendered as evidence copy
of a title on the vehicle transferred to Phillip Smith, and signed by Smith
(d/b/a Elite). 





[18] Elite did raise as a defense its
full compliance with the certificate of title act.  Tex.
Transp. Code Ann. ' 501.001 et seq. (Vernon
1999 and Supp. 2005).  Its no-evidence
motion for summary judgment asserts that the original title was included in the
transaction, was inspected, and that Elite had not previously encountered any
such problem with a stolen vehicle, such that this was all unforeseeable.  We note that a no-evidence motion for summary
judgment is limited to an essential element of a claim or defense on which the adverse
party would have the burden of proof at trial. 
See Keszler v. Mem'l Med. Ctr. of E. Tex., 105 S.W.3d 122, 128
(Tex. App.BCorpus Christi 2003, no pet.).  To the extent that the motion could be
considered as a traditional motion for summary judgment, Elite attached no
evidence in support of these assertions. 
We further note that although Elite raises the argument of no notice in
its appeal brief, this ground for summary judgment was not presented by Elite
to the trial court.





[19] We note that Elite did file a
response to Bailey's motion for rehearing or new trial with respect to the
summary judgment order in favor of Elite. 
In that response, Elite asserted the defense of no notice.  However, although this ground was before the
trial court when it denied Bailey's motion for rehearing or new trial, it was
not before the trial court prior to its ruling on the summary judgment motion. 





[20] Although Elite attached an
affidavit to its first motion for summary judgment, signed by Phillip Smith, it
asserted only that Smith had no knowledge the vehicle was stolen, had made no
representations about the vehicle to anyone, and, when he did learn it was a
stolen vehicle, contacted CarMax, secured a refund and refunded the purchase
money to Integrity.  It does not address
the issue of notice.  Similarly, in an
affidavit attached to Elite's second motion for summary judgment, there is no
reference to notice or lack thereof.  





[21] Elite also attached the affidavit
of Phillip Smith to this motion, in which he asserts his lack of any knowledge
that the vehicle was stolen.





[22] See, e.g., Old Republic Sur.
Co. v. Reyes, 2002 Tex. App. LEXIS 5649, at *6-*7 (Tex. App.BDallas 2002, pet. denied)
(designated as opinion); Geters v. Eagle Ins. Co., 834 S.W.2d 49, 50
(Tex. 1992) (per curiam) (addressing the predecessor statute).  We note that, in his response to Elite's
second motion for summary judgment, Baily also cited section 503.093 for the
proposition that it permits an individual to sue for damages where a provision
of the certificate of title act was allegedly not satisfied.  Tex.
Transp. Code Ann. ' 503.093 (Vernon 1999).  Although this section enables an individual
to bring an enforcement action, it does not address or permit an action to
recover personal damages.  See id.  





[23] The parties also urge lack of
proximate cause.  CarMax is the only
appellee also alleging in a summary judgment motion that Bailey may not recover
in tort because he sustained only economic damages.  The economic loss rule precludes recovery of
economic losses in negligence when the loss is the subject matter of a contract
between the parties.  Coastal Conduit
& Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 285 (Tex. App.BHouston [14th Dist.] 2000, no pet.)
(citing Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494
(Tex. 1991)).  The economic loss rule
also bars recovery of economic losses in a negligence claim brought against the
manufacturer or seller of a defective product where the defect results in damage
only to the product and not to a person or to other property.  Id. 
The Houston Court has also determined that, in the absence of privity of
contract and accompanying personal injury or property damages, a plaintiff
cannot recover for purely economic losses resulting from another's
negligence.  Id. at 288-89.  However, several of Bailey's causes of action
include a plea for mental anguish damages. 


 

In response to CarMax's no-evidence motion for
summary judgment on this point, Bailey included an affidavit asserting that, as
a result of the title misrepresentation, he "went into a severe depression
and [his] pre-existing post-traumatic distress syndrome disability ('PTSD') . .
. was exacerbated. . . .  [He] suffered headaches,
panic attacks, delusions and massive depression . . . [and] sought and
receive[d] medical treatment for [his] physical and mental health."  Bailey also attached an affidavit of a
treating physician reflecting treatment for PTSD.  The foregoing constitute some evidence of
non-economic damages, such that a no-evidence summary judgment motion could not
properly be granted on this ground.  





[24] Appellees also urged it was
unforeseeable that refunded money would not have been transferred to Bailey, as
intended by both CarMax and Elite. 
However, evidence of such a transfer is not an element of the
plaintiff's cause of action challenged by a no-evidence summary judgment; it is
more in the line of an affirmative defense on which CarMax and Elite bore the
burden of proof.  





[25] Appellees rely on the argument
that no duty in tort arises in conjunction with the certificate of title act
because it is a law of property, not of negligence.  See Gourrier v. Joy Meyers Motors, Inc.,
115 S.W.3d 570, 575 (Tex. App.BHouston [14th Dist.] 2002, no pet.).  However, we determine that this argument more
appropriately relates to the claim for negligence per se. 





[26] The 3Z Corp. court was
careful to distinguish between the issuer of the title and the indemnitor on
any issuing title:

 

Stewart Guaranty cannot be liable
for Keller's misrepresentation.  Keller
was the agent of Stewart Title, not Stewart Guaranty.  The relationship between Stewart Guaranty and
Stewart Title is established by law. 
Stewart Guaranty would have become an indemnitor under a title policy had
such policy issued.  A policy did not
issue, thus, there was nothing to indemnify. 
Stewart Guaranty would not be liable under any of the pleaded theories
of liability under the set of facts before us.

 

3Z Corp. v. Stewart Title Guar., Co.,
851 S.W.2d 933, 937-38 (Tex. App.BBeaumont 1993, writ denied) (citations omitted).  Appellees appear to rely on this case for the
proposition that none of them can be liable for the wrongful acts (or implied
misrepresentations of good title) made by Integrity to Bailey since all were
unaffiliated with Integrity.  





[27] In McCamish, the Victoria
Savings Association ("VSA") entered into an order for voluntary
supervision by the Texas Savings and Loan Commissioner which provided that no
action taken at any Board meeting would be valid or binding absent approval in
writing by the supervisor or Commissioner. 
While under such supervision, VSA entered into a settlement
agreement.  McCamish, Martin, Brown
& Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 789-90 (Tex.
1999).  Appling was hesitant to enter
into the agreement absent affirmation by VSA's lawyers, the McCamish firm, that
the agreement complied with relevant statutes. 
Id.  Although it provided
that affirmation, the McCamish firm never advised Appling of the supervision
order, and the settlement was ultimately found to be invalid.  Id. 
McCamish claimed it owed no duty to Appling, a nonclient.  Id. 





[28] McCamish provides:

 

Under section 552(2), liability is
limited to loss suffered:  (a) by the
person or one of a limited group of persons for whose benefit and guidance
[one] intends to supply the information or knows that the recipient intends to
supply it; and (b) through reliance upon it in a transaction that [one] intends
the information to influence or knows that the recipient so intends or in a
substantially similar transaction.  This
formulation limits liability to situations in which the attorney who provides
the information is aware of the nonclient and intends that the nonclient rely
on the information.  In other words, a
section 552 cause of action is available only when information is transferred
by an attorney to a known party for a known purpose.  

 

McCamish, 991 S.W.2d at 794 (citing Restatement (Second) of Torts ' 552(2) (1977)). 





[29] In addressing viability of a
Restatement section 552 claim against a lawyer, McCamish refers to a
lawyer's duties to a nonclient, irrespective of privity, in situations where
the attorney "invites reliance by a nonclient," that person so
relies, and the nonclient is not too remote from the lawyer to be entitled to
protection.  McCamish, 991 S.W.2d
at 794-95.





[30] The Supreme Court has expressly
adopted the language of Restatement section 552B, which limits damages for
negligent misrepresentation to pecuniary loss alone.  Fed. Land Bank Ass'n v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991) (citing Restatement
(Second) of Torts ' 552 cmt. a; ' 552B (1977)).  The Restatement advances several policy
reasons for limiting damages, including a lower degree of fault indicated by a
less culpable mental state and the need to keep liability proportional to
risk.  Id.  "We decline to extend damages beyond
those limits provided in Restatement section 552B."  Id. 





[31] Elite also urged in its motion for
summary judgment that Bailey was not a consumer as to Elite and acquired no
goods or services from it.  Because of
our conclusion as to the nonavailability of a DTPA claim to a subsequent
purchaser, we do not reach this argument on appeal.  





[32] Included in the earlier summary
judgment record are affidavits from CarMax and Elite, reflecting that each had
refunded all monies received for the vehicle back down the chain of title, to
Integrity, who paid them to MRD but not Bailey.  Bailey does not contest the affidavits but
instead argued in his response to the motion to strike and on appeal that
monies given to MRD were improperly used to settle the cross-claims brought
against MRD by CarMax, and those monies instead should have been forwarded to
Bailey.  We note that Bailey had already
received a judgment for damages against Taylor and Jackson d/b/a
Integrity.  Bailey proceeded to trial but
received a take-nothing judgment against MRD. 
The manner in which MRD and CarMax may have settled claims between them
is immaterial to Bailey's claim for money had and received / assumpsit against
appellees.  





[33], Summary judgment
issued in favor of CarMax against MRD on July 11, 2003, and against the
intervenor Geico on May 27, 2004.