COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-07-030-CV

 

 

DANIEL K. FIX AND                                                            APPELLANTS

BARBARA J. FIX

                                                   V.

 

FLAGSTAR BANK, FSB;                                                         APPELLEES

FIRST AMERICAN TITLE 

INSURANCE COMPANY OF 

TEXAS; AND FIRST
HORIZON 

HOME LOAN CORPORATION

 

                                              ------------

 

             FROM THE 16TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.  Introduction








This is an appeal from a summary judgment involving the refinance
of a home equity loan.  Appellants Daniel
and Barbara Fix brought suit to force Appellees Flagstar Bank (Flagstar), First
American Title Insurance Company of Texas (First American), and First Horizon
Home Loan Corporation (Horizon) to forfeit their rights to receive payment from
a refinance of a home equity loan issued by Flagstar to the Fixes in a
transaction closed by First American and later assigned to Horizon.  In ten issues stemming from the claim that
the refinance contract violated two provisions of the Texas constitution, the
Fixes argue that the trial court incorrectly granted summary judgment in favor
of all three companies and incorrectly denied summary judgment in their favor.  We will affirm.

II.  Factual and Procedural Background

In March 2002, the Fixes obtained a $288,000 home equity loan from
Liberty Lending, LLC (the Afirst loan@), which was later assigned
to Flagstar.  Less than one year later,
in January 2003, the Fixes refinanced the first loan with a conventional loan
through Flagstar in a transaction closed by First American (the Asecond loan@).  It is undisputed, however, that the second
loan violated two provisions of the Texas constitution.  First, it was executed within less than one
year=s time after the first loan
was executed.  See Tex. Const. art. XVI, ' 50(a)(6)(M)(iii)
(Vernon Supp. 2007).  Second, it was in
the form of a conventional loan, with provisions allowing for personal
liability against the Fixes and nonjudicial foreclosure.  See id. ' 50(a)(6)(C), (D).  








Several months after the second loan was executed, in December
2003, Mr. Fix and the vice president of Flagstar had a phone conversation about
the legality of the second loan.  Mr. Fix
alleges that he told the vice president that the loan violated the two
provisions of the Texas constitution discussed above.  The vice president, however, maintains that
the only topic of their phone conversation was the way in which title was held
on the second loan.[1] 

The day after the
December phone conversation, the vice president sent a letter to the Fixes
saying that she and Mr. Fix had engaged in a phone conversation as to the
validity of the Deed of Trust (without going into the details of the
conversation) and that she had mailed a letter of inquiry to First American,
the title insurer. 








Claims counsel
for First American also mailed the Fixes a letter saying that Flagstar had
informed him that the Fixes contested the legality of the second loan (again,
without specifying the grounds of the illegality) and that regardless of the
validity of the second loan, Flagstar was subrogated to the first loan, which
was indisputably valid.  In reply, Mr.
Fix sent a letter to Flagstar and First American detailing the two
constitutional grounds for dispute of the second loan.  This letter, which was sent in February 2004,
constituted the first written notice given by the Fixes regarding the potential
constitutional illegalities. 

Twenty-one days
after receiving the February letter from Mr. Fix, the vice president of
Flagstar sent the Fixes a letter offering to cure the constitutional violations
via a new home equity loan reclosed at a rate equal to or better than the rate
of the second loan at no cost to the Fixes and to pay the Fixes $1,000.  The letter also stated that First American
would draft the new loan instrument and close the transaction for free.  The Fixes refused, in writing, Flagstar=s and First American=s offer to cure and instead asked Flagstar to forfeit the
entire amount of the second loan, the principal of which was approximately
$287,000, in addition to all interest. 

Flagstar and
First American declined the Fixes= offer, and the Fixes brought suit to compel
forfeiture.  The Fixes also claimed that
Flagstar and First American violated the Texas Deceptive Trade Practices Act
(DTPA).  Finally, the Fixes brought suit
against Horizon, to whom the Fixes= loan was assigned in February 2005, more than two years
after the parties executed the disputed contract.  All parties moved for summary judgment.  The trial court denied the Fixes= traditional motion for summary judgment, granted Flagstar=s and First American=s traditional motions for summary judgment, and granted
Horizon=s no-evidence motion for summary judgment.  The Fixes now appeal.








III.  Standards of review

A.     Traditional Summary Judgment Motion
Standard

In a summary
judgment case, the issue on appeal is whether the movant met the summary
judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671, 678 (Tex. 1979).  The burden of
proof is on the movant, and all doubts about the existence of a genuine issue
of material fact are resolved against the movant.  Sw. Elec. Power Co., 73 S.W.3d at 215.

When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant, and
we indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We will not consider evidence that favors
the movant=s position unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).








We will affirm
the summary judgment only if the record establishes that the movant has
conclusively proved all essential elements of the movant=s cause of action or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at 678.

A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim. 
IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143
S.W.3d 794, 798 (Tex. 2004).  Once the
defendant produces sufficient evidence to establish the right to summary
judgment, the burden shifts to the plaintiff to come forward with competent
controverting evidence raising a genuine issue of material fact with regard to
the element challenged by the defendant. 
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).








A defendant is
entitled to summary judgment on an affirmative defense if the defendant
conclusively proves all the elements of the affirmative defense.  Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999); see Tex.
R. Civ. P. 166a(b), (c).  To
accomplish this, the defendant-movant must present summary judgment evidence
that establishes each element of the affirmative defense as a matter of
law.  Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s favor.  IHS Cedars
Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798
(Tex. 2004). 

When both parties
move for summary judgment and the trial court grants one motion and denies the
other, the reviewing court should review both parties= summary judgment evidence and determine all questions
presented.  Valence Operating Co.,
164 S.W.3d at 661.  The reviewing court
should render the judgment that the trial court should have rendered.  Id.

B.     No-Evidence Motion for Summary Judgment
Standard

After an adequate
time for discovery, the party without the burden of proof may, without
presenting evidence, move for summary judgment on the ground that there is no
evidence to support an essential element of the nonmovant=s claim or defense. 
Tex. R. Civ. P.
166a(i).  The motion must specifically
state the elements for which there is no evidence.  Id.; Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 207 (Tex. 2002). 
The trial court must grant the motion unless the nonmovant produces
summary judgment evidence that raises a genuine issue of material fact.  See Tex.
R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power Co., 73 S.W.3d at
215.








When reviewing a
no-evidence summary judgment, we examine the entire record in the light most
favorable to the nonmovant, indulging every reasonable inference and resolving
any doubts against the motion.  Sudan
v. Sudan,  199 S.W.3d 291, 292 (Tex.
2006).  If the nonmovant brings forward
more than a scintilla of probative evidence that raises a genuine issue of
material fact, then a no-evidence summary judgment is not proper.  DeSoto v. K Mart Corp., 981 S.W.2d
266, 269 (Tex. App.CSan Antonio 1998, pet. denied). 

IV.  No Retroactive
Application of the Constitutional Amendment

Before reaching
the issues presented by the Fixes, we must first determine which version of the
Texas constitution governs our disposition of this case.  See, e.g., Benchmark Bank v. Crowder,
919 S.W.2d 657, 660 (Tex. 1996) (refusing to apply constitutional amendments to
loan rights fixed prior to the effective date of the amendments); accord
Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 219 (Tex.
2002) (addressing whether a statutory amendment applied retroactively); Beck
v. Beck, 814 S.W.2d 745, 750 (Tex. 1991) (applying a constitutional
amendment retroactively).  Because the
determination of which version of the constitutional amendment applies is a
question of law, we will review this issue de novo.  See Subaru of Am., Inc., 84 S.W.3d at 219;
Benchmark Bank, 919 S.W.2d at 660; Beck, 814 S.W.2d at 750.

The second loan
was executed in January 2003.  At that
time, the Texas constitution provided that 








the lender or any holder of the note for the extension of credit
shall forfeit all principal and interest of the extension of credit if the
lender or holder fails to comply with the lender=s or holder=s obligations under the extension of credit within a reasonable
time after the lender or holder is notified by the borrower of the lender=s failure to comply.

 

Act of May 24, 2003, 78th Leg., R.S.,
S.J.R. 42, 2003 Tex. Gen. Laws 6219 (amended 2003) (current version at Tex. Const. art. XVI, ' 50(a)(6)(Q)(x)) (emphasis added).  This section of the constitution did not
include any specific provisions directing a lender how to cure a loan=s constitutional defect or setting a time limitation on when
a cure must be tendered.  See id.

In September
2003, the citizens of Texas voted to amend this section.  In addition to adding specific ways by which
a lender or holder could cure a home equity loan=s constitutional violations, the amendment changed the Areasonable time@ period standard to require curing action within a more
specific, sixty-day time period.  Id.  The question presented by this case is
whether these 2003 changes retroactively apply to Flagstar and First American=s offer to cure the constitutional defects in the
Fix-Flagstar contract, which was executed before the changes were passed.  








When we interpret
our state constitution, we rely heavily on its literal text and must give
effect to its plain language.  Stringer
v. Cendant Mortgage Corp., 23 S.W.3d 353, 354 (Tex. 2000).  We strive to give constitutional provisions
the effect their makers and adopters intended. 
Id.  In construing a
constitutional amendment, we may also consider its legislative history.  Id.

Generally,
constitutional amendments and statutes operate prospectively.  Tex.
Const. art. XVII, ' 1(c) (reciting that a constitutional amendment Ashall become a part of [the] [c]onstitution@ when it appears that Aa majority of the votes cast have been cast in favor of
[the] amendment@); Benchmark Bank, 919 S.W.2d at 660 (refusing to
apply a constitutional amendment retroactively); Deacon v. City of Euless,
405 S.W.2d 59, 61 (Tex. 1966) (addressing whether laws may apply
retroactively); Cox v. Robison, 105 Tex. 426, 439, 150 S.W. 1149, 1156
(1912) (same).  They may operate
retroactively, however, when it is apparent that the makers and adopters
intended retroactive application of the amendment, provided retroactive
application does not impair vested rights. 
Deacon, 405 S.W.2d at 61; Cox, 105 Tex. at 439, 150 S.W.
at 1156.  Without such clear intent,
retroactive application is commonly regarded with disfavor and should occur Aonly where the public policy is so clearly and broadly
stated as to be unmistakable.@  Beck, 814
S.W.2d at 750 (Cook, J., concurring); see Deacon, 405 S.W.2d at 61.  








Indeed, public
policy is a driving force in determining whether retroactive application is
proper.  It is well-established that laws
in effect at the time a contract is entered into should govern the fulfillment
of the contract.  Wessely Energy Corp.
v. Jennings, 736 S.W.2d 624, 626 (Tex. 1987).  This doctrine is based on the presumption
that the parties to a contract knew and took into consideration the law in
effect at the time of contract.  See
Jamestown Partners, L.P. v. City of Fort Worth, 83 S.W.3d 376 (Tex. App.CFort Worth 2002, pet. denied).  Therefore, courts are reluctant to change the
rights and obligations of parties from those originally agreed to by
retroactively applying a change in the original law.  See id.








An example of a
constitutional amendment requiring retroactive application is found in the Beck
case, in which the supreme court evaluated the 1980 amendment to article XVI,
section fifteen of the Texas constitution, which allowed spouses to enter into
premarital agreements.  Tex. Const. art. XVI, ' 15 (amended 1980); Beck, 814 S.W.2d at
745.  In that case, a husband and wife
entered into a premarital agreement in 1977. 
Beck, 814 S.W.2d at 746. 
At that time, although section 5.41(a) of the family code authorized
such agreements, they were illegal under the Texas constitution.  Id. at 748-49.  In 1980, the citizens of Texas voted to amend
article XVI, section fifteen so as to legalize premarital agreements.  Id. at 747.  Thereafter, the husband died in 1981, and the
executor of his estate brought suit to have the premarital agreement declared
invalid.  Id. at 746.  The supreme court looked to the legislative
history and public policy behind the constitutional amendment and, applying the
doctrine of implied validation to family code section 5.41(a), determined that
retroactive application of the constitutional amendment to the premarital
agreement at issue was warranted.  Id.
at 746,749.  Looking at testimony presented
to the legislature that one purpose of the amendment was Ato allow people to do what they wanted to do all along,@ the supreme court determined that the makers and adopters
intended retroactive application of the amendment.  Id. at 748.

Apart from the
constitutional amendment dealing with the implied validation of family code
section 5.41(a), appellate courts of this state have seldom allowed retroactive
application of a constitutional amendment. 
For example, in one case, the supreme court dealt with a federal tax
lien on a homestead.  Benchmark Bank,
919 S.W.2d at 660.  By the time the case
made its way to the supreme court, the people of Texas had approved an
amendment that would have been dispositive of the issue, allowing the tax
lien.  Id. at 660.  The supreme court, however, refused to
retroactively apply the amendment because the tax lien and the lender=s right to recover were fixed before the amendment=s adoption.  Id.  








Likewise, in
evaluating the 2003 amendment to the notice provision of article XVI, section
50(a)(6)(Q)(x), the exact provision applicable here, the Bankruptcy Court for
the Northern District of Texas explicitly refused retroactive application of
the amendment creating the sixty-day time period for a cure.  See Adams v. Ameriquest Mortgage Co.,
307 B.R. 549, 559 (Bankr. N.D. Tex. 2004). 
The court in Adams looked to the legislative history of the 2003
amendment and decided that the purpose of the amendment was merely to clarify
the cure process to be utilized by a lender, not to retroactively superimpose a
series of procedural hoops on lenders who had entered into home equity loans
prior to September 2003.  Id. at
559. 








In determining
whether retroactive application of the 2003 amendment is appropriate in the
case at bar, we first look at the literal language of the amendment.  See Stringer, 23 S.W.3d at 354.  The face of the amendment nowhere indicates
that the makers and adopters intended retroactive application.  Furthermore, unlike the legislative history
of the constitutional amendment in Beck, the legislative history of the
constitutional amendment in this case indicates that the makers meant it as
nothing more than a Aclarif[ication of] the cure process.@  House Comm. Report on Financial Institutions,
Comm. Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003).[2]  Furthermore, there is no overriding social
policy in favor of retroactive application. 
Therefore, retroactive application of the 2003 amendment is not
warranted, and instead, we apply the version of the constitution in force at
the time the Fixes and Flagstar entered into the contract.[3]  Benchmark Bank, 919 S.W.2d at 660
(refusing to apply a constitutional amendment when a party=s rights were fixed before the amendment=s adoption).

V.  Offer to Cure








As discussed
above, the version of section 50(a)(6)(Q)(x) of the Texas constitution in
effect at the time the Fixes and Flagstar executed the loan agreement mandated
that a lender forfeit the principal and interest of a home equity loan that
contained constitutional defects if the borrower notified the lender of the
lender=s failure to comply with its obligations under the
constitution, and the lender did not correct the defects within a reasonable
time.  Act of May 24, 2003, 78th Leg.,
R.S., S.J.R. 42, 2003 Tex. Gen. Laws 6219 (amended 2003).  The
section did not set forth specific cure provisions; those were enacted with the
passage of the September 2003 amendment. 
See Tex. Const.
art. XVI, ' 50(a)(6)(Q)(x) (amended 2003).

Our supreme court
analyzed the pre-2003 amendment version of section 50(a)(6)(Q)(x) in the Doody
case.  Doody v. Ameriquest
Mortgage Co., 49 S.W.3d 342 (Tex. 2001). 
In that case, the supreme court, answering certified questions from the
United States Court of Appeals for the Fifth Circuit, evaluated a home equity
loan entered into in January 1998.  Id.
at 343.  Approximately three months after
the parties executed the loan, the lender discovered that it had violated a
provision of the Texas constitution by charging too much in closing costs.  Id. 
To cure this error, the lender refunded the excess amount to the
borrower.  Id.  The borrower brought suit to compel
forfeiture of the principal and interest of the loan in accordance with section
50(a)(6)(Q)(x).  Id.  








In interpreting
section 50(a)(6)(Q)(x), the supreme court determined that the section provided
a lender with a reasonable opportunity to cure defects in the original loan
contract.  Id. at 346.  This cure power gave lenders the ability to
cure not only the particular defect at issue but also to validate the entire
lien.  Id. at 347.








Assuming that the
December phone call between Fix and the vice president of Flagstar constituted
sufficient notice of the loan=s constitutional violations,[4]
Flagstar and First American responded within, at the latest, approximately
three months of receiving notice.  During
these months, the record indicates that there was communication between the
Fixes and First American and between counsel for Flagstar and the vice
president of First American regarding the loan. 
We additionally note that Flagstar and First American acted to cure
defects in the second loan within the same three-month time period in which the
lender in Doody acted to cure the Doody=s home equity loan defect. 
The supreme court determined that the lender in Doody had cured
within a reasonable time.  Id. at
344, 347.  Consequently, applying the
pre-2003 amendment version of section 50(a)(6)(Q)(x), we hold that the summary
judgment evidence here conclusively establishes that Flagstar and First
American=s offer to cure occurred within a reasonable time period.

Furthermore, to
cure the defects in the second loan, Flagstar offered to redo the Fixes= loan contract to bring it into compliance with the Texas
constitution, pay the Fixes $1,000, and give the Fixes at least the same or a
better interest rate than the rate set in the second loan.  First American additionally offered to
reclose the transaction at no cost to the Fixes.[5]  Applying the pre-2003 amendment version of
section 50(a)(6)(Q)(x) of the Texas constitution, the summary judgment evidence
conclusively establishes that this offer to cure by Flagstar and First American
properly constituted a sufficient offer to cure the defects in the second loan.[6]








We note that all
parties in this appeal extensively discuss the LaSalle case.  See LaSalle Bank Nat=l Ass=n v. White,
217 S.W.3d 573 (Tex. App.CSan Antonio 2006, pet. filed).  That case, however, has no application
here.  The alleged unconstitutionality of
the loan in LaSalle was based on the agricultural-use provision in
section 50(a)(6)(I), not on section 50(a)(6)(Q)(x).  See id. at 577-78.  Furthermore, the lender in the LaSalle
case never made any offer to cure, unlike Flagstar and First American
here.  Id.  The appellate court in LaSalle was
therefore forced to consider an issue that we need not reachCwhether equitable subrogation is appropriate in the
context of home equity loan contracts (issues one and two presented by the
Fixes)Cbecause Flagstar and First American=s timely offer to cure pursuant to the pre-2003 amendment
version of section 50(a)(6)(Q)(x) validated the lien on the Fixes= home.  See
Doody, 49 S.W.3d at 347; LaSalle, 217 S.W.3d at 578.

Thus, the summary
judgment evidence conclusively established thatCunder the pre-2003 amendment version of section
50(a)(6)(Q)(x)CFlagstar and First American offered to cure all defects in
the second loan within a reasonable time after being notified of the
defects.  See Tex. R. Civ. P. 166a(b), (c);
Rhone-Poulenc, 997 S.W.2d at 223.













Accordingly, the
trial court properly granted Flagstar=s and First American=s traditional motions for summary judgment on the ground
that they properly and timely offered to cure the constitutional defects in the
second loan.[7]  See Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co., 73 S.W.3d at 215.  Furthermore, with the exception of the DTPA
issue discussed below, the Fixes based their own motion for summary judgment on
their forfeiture claim for Flagstar=s and First American=s violation of constitutional provisions and failure to
cure such violations.  Because we have
already disposed of these issues in Flagstar=s and First American=s favorCholding that the summary judgment evidence conclusively
established that an offer to cure all defects was made within a reasonable timeCwe hold that the trial court properly denied the Fixes= motion for summary judgment on their forfeiture
claim.  Accordingly, because the Fixes= third, fourth, fifth, seventh, eighth, and ninth issues
all challenge the propriety of the trial court=s denial of the Fixes= motion for summary judgment on their forfeiture claim, we
overrule them all and address the Fixes= sixth and tenth issues below.

 

VI.  DTPA Violations

 

In their sixth
issue, the Fixes allege that the trial court improperly granted Flagstar=s and First American=s motion for summary judgment on the Fixes= claim of a violation of the DTPA.  The Fixes allege that Flagstar and First
American provided refinancing and title insurance services in an unconscionable
fashion and that the Fixes suffered economic damage from such conduct.  Flagstar and First American respond with two
arguments:  the Fixes were not consumers
under the DTPA because the purpose of the second loan was not the purchase of a
good or service and, even if the Fixes were consumers for DTPA purposes, they
were unable to show any damages as a result of the refinance.  








To maintain a
DTPA cause of action, the claimant must establish that (1) he or she is a
consumer of the defendant=s goods or services; (2) the defendant committed a false,
misleading, or deceptive act in connection with the lease or sale of goods or
services, breached an express or implied warranty, or engaged in an
unconscionable action or course of action; and (3) such actions were the
producing cause of the claimant=s actual damages.  Brown
v. Bank of Galveston, Nat=l Ass=n, 963 S.W.2d
511, 513 (Tex. 1998); Wingate v. Acree, No. 14-01-00851-CV, 2003 WL
1922569, at *3 (Tex. App.CHouston [14th Dist.] Apr. 24, 2003, no pet.) (mem. op.); see
Tex. Bus. & Com. Code Ann.
' 17.50(a) (Vernon Supp. 2006).  

A.     Qualifying as a Consumer under the DTPA

A person
qualifies as a consumer under the DTPA by meeting two requirements.  First, the person must seek or acquire goods
or services by lease or purchase.  Tex. Bus. & Com. Code Ann. ' 17.45(4).  Second,
the goods or services sought or acquired must form the basis of the party=s complaint.  Melody
Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351B52 (Tex. 1987).  If
either requirement is lacking, the party must look to the common law or some
other statutory provision for redress.  Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981); Ford v.
City State Bank of Palacios, 44 S.W.3d 121,133 (Tex. App.CCorpus Christi 2001, no pet.).  Whether a person meets these requirements is
a question of law.  Johnson v. Walker,
824 S.W.2d 184, 187 (Tex. App.CFort Worth 1991, writ denied); see also Ortiz v. Collins,
203 S.W.3d 414, 424 (Tex. App.CHouston [14th Dist.] 2006, no pet.).








Generally, a
person cannot qualify as a consumer if the underlying transaction is a pure
loan because money is considered neither a good nor a service.  Riverside Nat=l Bank v. Lewis,
603 S.W.2d 169, 173B74 (Tex. 1980) (holding that the refinance of a car loan
did not confer consumer status on the debtor). 
Since the Riverside decision, the supreme court has limited the
case to its facts, emphasizing that the claimant in Riverside sought
only an extension of credit and nothing more. 
La Sara Grain Co. v. First Nat=l Bank of Mercedes,
673 S.W.2d 558, 566 (Tex. 1983).  

Even if the
claimant seeks or acquires a Agood@ or Aservice@ as defined by the DTPA and subsequent case law, the
claimant must additionally show that the good or service sought or acquired
forms the basis of the party=s complaint in order to qualify as a consumer and to bring
a valid DTPA claim.  Melody Home Mfg.
Co., 741 S.W.2d at 351B52.  While title
insurance is a service under the DTPA, 3Z Corp. v. Stewart Title Guar. Co.,
851 S.W.2d 933, 937 (Tex. App.CBeaumont 1993, writ denied), a claimant can bring a DTPA
claim against the title insurance company only if the title insurance services
form the basis of the claim.  See
Chicago Title Ins. Co. v. McDaniel, 875 S.W.2d 310, 310 (Tex. 1994)
(deciding a case where homeowners brought a DTPA claim against their title
insurance company because their property was subject to a preexisting lien
undiscovered by the title company); Everson v. Mineola Cmty. Bank, No.
12-05-00334-CV, 2006 WL 2106959, at *2 (Tex. App.CTyler July 31, 2006, pet. denied) (mem. op.) (holding that
homeowners were not consumers on the basis of their forced purchase of private
mortgage insurance where their DTPA claim had nothing to do with the insurance
itself but rather an allegedly wrongful foreclosure).








 

 

B.     The Fixes do not Qualify as Consumers under
the DTPA

The Fixes argue
that they are consumers under the DTPA because they sought refinancing services
from Flagstar and title insurance services from First American.  First, the refinancing services sought from
Flagstar are directly analogous to the refinancing services sought by the
claimant in Riverside.  See 603
S.W.2d at 173B74.  Because the
Fixes had already purchased their house, the Flagstar refinance merely extended
credit to the Fixes.  As such, the
refinance cannot qualify as a good or a service under the DTPA.  See id.  Therefore, summary judgment in favor of
Flagstar was proper because Flagstar conclusively disproved the consumer status
element of a DTPA claim.  See IHS
Cedars Treatment Ctr., 143 S.W.3d at 798.  








As to First
American, assuming that title insurance constitutes a service under the DTPA,
the Fixes must meet the second element of consumer status by basing their DTPA
claim on faulty title insurance.  See
Chicago Title Inc. Co., 875 S.W.2d at 310; Melody Home Mfg. Co., 741
S.W.2d at 351B52.  The Fixes
failed to do this, however, because the basis of their claim is that Flagstar
and First American refinanced too soon after the initial home equity loan with
documents that permitted personal recourse and nonjudicial foreclosure.  The Fixes= DTPA claim does not implicate the title insurance
services provided by First American. 
Therefore, summary judgment in favor of First American was proper
because First American also conclusively disproved the consumer status element
of the DTPA claim.  See IHS Cedars
Treatment Ctr., 143 S.W.3d at 798. 
Accordingly, we overrule the Fixes= sixth issue.

VII.  No-Evidence Summary Judgment in Favor of
Horizon

The Fixes argue
in their tenth issue that the no-evidence summary judgment granted in favor of
Horizon was improper.  As discussed, once
a party without the burden of proof specifically states the elements for which
there is no evidence on a claim, the party with the burden of proof must
demonstrate that a genuine issue of material fact exists as to that
element.  Tex. R. Civ. P. 166a(i);  Johnson, 73 S.W.3d at 207; Sw. Elec.
Power Co., 73 S.W.3d at 215.  If the
party with the burden of proof cannot show a genuine issue of material fact,
then a no-evidence summary judgment is proper. 
Tex. R. Civ. P. 166a(i);  Johnson, 73 S.W.3d at 207; Sw. Elec.
Power Co., 73 S.W.3d at 215.  








Reviewing the
entire record in the light most favorable to the Fixes, indulging every
reasonable inference in their favor, and resolving any doubts against the
motion, we cannot say that the trial court erred by granting the no-evidence
motion for summary judgment.  See IHS
Cedars Treatment Ctr., 143 S.W.3d at 798. 
Horizon was not involved in the transaction between the Fixes, Flagstar,
and First American, and, in fact, did not become the assignee until two years
after the parties signed the contract. 
As the assignee, Horizon had an interest in the ultimate resolution of
the suit; however, that interest was wholly contingent on the determination of
the suit between the Fixes, Flagstar, and First American.  Once Flagstar and First American established
the grounds for a traditional summary judgment, the Fixes had to bring forth at
least a scintilla of evidence raising a genuine issue of material fact as to
any cause of action against Horizon.  See
Moore, 981 S.W.2d at 269.  Because
the Fixes were unable to meet this burden, the trial court properly granted
Horizon=s no-evidence motion for summary judgment.  Therefore, we overrule the Fixes= tenth issue that the no-evidence summary judgment in
favor of Horizon was improperly granted.

VIII.  Conclusion

Having overruled all of the Fixes= issues, we affirm the trial court=s judgment.

 

 

SUE WALKER

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER and MCCOY, JJ.

 

DELIVERED:
November 21, 2007











[1]Specifically,
title was in the individual names of Daniel and Barbara Fix rather than in the
name of the family trust, implicating issues beyond this appeal.  





[2]Those
proposing the amendment discussed its purpose as follows:

 

The
Constitution provides that the lender forfeits all principal and interest if a
failure to comply with all the lender=s obligations is not
corrected in a reasonable time.  The Acure
process@ is
not otherwise described, either in the Constitution or in statute . . . [the
bill proposing the amendment] addresses these issues by authorizing home equity
lines of credit . . . [and] clarifying the cure process.

 

House Comm. Report on Financial Institutions,
Comm. Report, Tex. S.J.R. 42, 78th Leg., R.S. (2003).





[3]Because
we have held that the makers and adopters of the cure provisions set forth in
the post-2003 amendment version of section 50(a)(6)(Q)(x) did not intend for
the amendment to apply retroactively to home lending contracts executed prior
to September 12, 2003, analysis of an Ex Post Facto Clause violation (including
whether the changes are remedial in nature) is unnecessary.  Cf., e.g., Sims v. Adoption Alliance,
922 S.W.2d 213, 215B16
(Tex. App.CSan
Antonio 1996, writ denied) (determining whether a statutory amendment was
intended to be retroactive before addressing whether its retroactive
application would violate the constitutional prohibition against ex post facto
laws).





[4]We
note that the explicit provisions of the Fix-Flagstar contract require written
notice of any defects in the contract or in the performance of the contract
and that the contract=s
forbearance clause would make waiver of this right to written notice difficult
on these facts.  Nonetheless, proof of
the exact date on which the Fixes gave notice and whether Flagstar and First
American waived their right to receive written notice is not necessary to
support the trial court=s
summary judgment because the pre-2003 amendment version of section
50(a)(6)(Q)(x) controls, and that version required only that Flagstar and First
American respond within a Areasonable time,@
which, as set forth below, they did.





[5]The
Fixes argued in their brief and during oral argument that Flagstar=s and
First American=s
offer to cure does not comply with various provisions of the post-2003
amendment version of section 50(a)(6)(Q)(x). 
Because we have held that the pre-2003 amendment version of this section
is applicable to the Fix-Flagstar refinance contract, we need not address these
contentions.





[6]We
recognize that the Fixes refused to execute the documents necessary to in fact
cure the constitutional defects in the second loan.  We cannot speculate as to whether the
pre-2003 version of section 50(a)(6)(Q)(x) permits such refusal because the
parties did not present such issue to the trial court and have not presented it
on appeal.  See Tex. R. App. P. 33.1, 38.1.  Addressing the issues before us, we hold only
that, applying the pre-2003 version of section 50(a)(6)(Q)(x), Flagstar and
First American conclusively established a timely offer to cure and thereby
properly obtained summary judgment on the Fixes=
forfeiture claim.





[7]The
trial court=s
order granting summary judgment provided that Athere
is no genuine issue as to any material fact and that the Defendants are
entitled to judgment as a matter of law on all of the issues set out in their
motions.@  Thus, we must uphold the trial court=s
summary judgment for Flagstar and First American if it is proper on any ground
they asserted.  See Provident Life
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003); Star-Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).